# In the matter of the petition of the NEW YORK CENTRAL RAIL ROAD COMPANY.

The existence of a *mortgage* which is a lien upon land taken and used by a rail road company for the purpose of constructing and operating its road, is one of the *defects* in the title to such land, contemplated in the 21st section of the general rail road act of 1850, so as to authorize such company to proceed anew to acquire a valid title, in the same manner as if no appraisal had been previously made, nor any attempt to procure the title by agreement and purchase.

The company is not obliged to wait until the mortgaged premises are sold under a decree of foreclosure; but on discovering the existence of the incumbrance, they may proceed immediately, and on complying with all the provisions of the act, may have the lien extinguished, as to the land occupied by them.

Matter of the New York Central Rail Road Company.

THIS was an application for the appointment of commissioners to ascertain and appraise the compensation to be paid to the owners or persons interested in certain real estate which had been taken for the use of the Schenectady and Troy Rail Road Company before its consolidation with the New York Central Rail Road Company. The petition set forth the act of incorporation of the former company, and alleged that they did, pursuant to said act, construct their railway. That the lands mentioned in schedule A, annexed to the petition, were necessary for, and required by, the Schenectady and Troy Rail Road Company for the purposes of its incorporation, and that on the 7th day of May, 1841, John Mallany was in possession of the land in said schedule described as parcel No. 1, claiming to own the same, clear and free from all incumbrances; and that, believing said claim to be well founded, the company paid Mallany $500 therefor, being the full value, and took from him a warranty deed in fee for said parcel, on that day. That on the 17th of May, 1841, John Whittick was in possession of the land described in the schedule as parcel No. 2, claiming to own the same in fee; and that believing said claim to be just, the company, on that day, paid him $410 therefor, being the full value, and took a warranty deed from him. And that on the 29th day of April, 1841, Peter D. Van Vranken was in possession of the land described in the schedule as parcel No. 3, claiming to own the same in fee, clear of incumbrance; and that the company, believing his claim to be well founded, paid him therefor $85.75, the full value, and received a warranty deed from him in fee, for said premises. That in the spring of the year 1841, the company entered into possession of said several parcels, under said deeds, as their own property, and constructed their road thereon, at great expense; and that said lands had ever since said spring of 1841 been and still were used under said deeds for rail road purposes. That the length of said rail road was 21 miles; of which a map and survey was made and filed in January, 1840. That on the 28th of January, 1841, the road was located and the location in writing was filed as required by law. That the capital stock of the company was $650,000, which was all sub-

Matter of the New York Central Rail Road Company.

scribed and paid in in good faith.   That immediately after the purchases aforesaid the rail road was constructed from Schenectady to the west bank of the Hudson river, by said company, and had ever since been and still was used through its entire extent, for rail road purposes.   That it was so used by said Schenectady and Troy Rail Road Company until its consolidation with the New York Central Rail Road Company, pursuant to the act of April 2, 1853, on the 7th day of July, 1853, since which time the latter company had possessed and owned all the real and personal property, and exercised all the rights, privileges and franchises which before then belonged to the said Schenectady and Troy Rail Road Company.   That in the year 1846, one Charles A. Peck, now of the city of New York, as administrator with the will annexed of Thomas Tom deceased, filed his bill of complaint in the then court of chancery of the state of New York, against the said Mallany, Whittick and Van Vranken, to foreclose a mortgage covering the lands mentioned and described in said schedule A, and other lands, which mortgage was made by Elias Kane, late of the city of Albany, deceased, and Deborah his wife, to Thomas Bloodgood, acting executor of Thomas Tom, deceased, on the 1st day of May, 1817.   That said Schenectady and Troy Rail Road Company and others, believing that said mortgage had been satisfied, interposed defenses against the same as they were advised were proper ; and that said action to foreclose was transferred from court to court until it was brought into the court of appeals and there argued, and which court decided the same in December, 1853, and not only decided that said mortgage was a valid *lien and incumbrance* upon the lands mentioned and described in said schedule A, and in part unsatisfied, but in effect that the heirs at law of the said Elias Kane, deceased, had still an interest in said premises, and that the title of the Schenectady and Troy Rail Road Company and that of the petitioners was defective ; that they had therefore failed to obtain a perfect title to said lands mentioned in said schedule, and that they were required by the petitioners for the purpose of constructing and operating their road ; and that they had not been able to acquire a perfect title to the said

lands, for the causes above set forth.   That Charles A. Peck, administrator, Thomas T. Bloodgood, executor, and various other persons and parties named in the petition, *had or claimed to have*, as the petitioners were informed and believed, some interest in the said lands, as owners or incumbrancers or otherwise. They therefore prayed that commissioners might be appointed, and that they might be permitted to continue in possession in the mean time, and that all actions and proceedings against them might be stayed.

Copies of the petition and notice were served upon all the parties named in the petition.   Charles A. Peck appeared to oppose the motion, and his counsel read the affidavits of Mallany, Van Vranken and Sarah Whittick, and the answer of the Schenectady and Troy Rail Road Company in the suit of Peck against that company, which he claimed showed a good adverse possession under the sheriff's deed to Whittick and Foster as against the heirs at law of Elias Kane, which barred their legal title to the premises.   The parcel of land purchased from Peter D. Van Vranken was not covered by the mortgage.   It appeared that the court of appeals decided that the mortgage was valid upon its execution; that the part of the premises conveyed by Kane and wife to Peter A. Van Vranken was released from the lien of the mortgage; that the sheriff's deeds to Whittick and Foster were and are void for uncertainty, and that the *defendants* who claimed estates under the said deed did not take and had not any title derived therefrom, and that said premises were subject to the lien of the mortgage, which had not been paid or extinguished.   A bill of amendment and supplement was filed in the supreme court, and a decree finally entered in conformity with the decision of the court of appeals, ordering among other things, the premises in the possession of the petitioners to be sold, in the inverse order of alienation.

*Townsend & Kellogg*, for the petitioners.

*P. Potter* and *A. C. Paige*, for Charles A. Peck.

Matter of the New York Central Rail Road Company.

*By the Court,* C. L. ALLEN, J. The Schenectady and Troy Rail Road Company, in procuring title to lands under their organization and act of incorporation, obtained the deeds for the parcels of land contained in schedule A, at the times and in the manner and for the consideration stated in the petition. They supposed and believed at the time, that they obtained a good and perfect title, and went on and constructed their rail road at a great expense, over the lands thus purchased, and remained in possession, under claim of title, till the filing of the bill to foreclose the Kane mortgage. They interpose among other things the defense of payment of the mortgage, and their title thus acquired. The court of appeals determined and decided that the mortgage was not paid; that it was a good and valid lien upon the premises to which they supposed they had acquired title, except as to the part conveyed to Peter A. Van Vrancken ; that the sheriff's deed through which the plaintiffs and those under whom they claimed derived title were void for uncertainty ; and a decree is now in force in the supreme court, in obedience to that decision, ordering a sale of these premises under that mortgage, upon which it is adjudged there was due at the time of the entry of the decree, in April last, the sum of $18,771.16. The petitioners claim that the Schenectady and Troy Rail Road Company entered upon and took possession of those lands under the right of eminent domain, as prescribed and regulated under the act of 1847, ch. 272, p. 301. That they attempted to acquire title in the manner required by law, but have failed, and that the title of the Schenectady and Troy Rail Road Company, and of the petitioners, is *defective ;* and the first question that presents itself for the consideration of the court is whether their title is defective or not.

By the 13th section of the general rail road act,(*a*) it is provided, that in case any company is *unable to agree for the purchase of any real estate* for the purposes of its incorporation, it shall have the right to acquire title to the same in the manner and by the special proceedings pointed out in the act. The 14th section prescribes what the petition shall contain, and among

(*a*) *Laws of* 1850, *ch.* 140 ; 1 *R. S. 4th ed. p.* 1220.

other things "*that the company has not been able to acquire title thereto, and the reason of such inability;*" and it must state the liens or incumbrances upon said real estate, and the names of those who have *estates or interests* in said real estate ; and a copy of the petition with a notice is directed to be served on all persons whose *interests* are to be affected by the proceedings. The 15th section declares that on presenting such petition, with proof of service of copy and notice, all persons *whose estates or interests are to be affected* may show cause against granting the prayer of the petition, and may disprove any of the facts alleged in it. And the court, after hearing the proofs and allegations of the parties, if no sufficient cause is shown against granting the prayer of the petition, shall make an order for the appointment of commissioners. The 21st section, under which the petitioners claim that they are entitled to the relief sought for, enacts, " that if at any time after an attempt to acquire title by appraisal of damages or otherwise, it shall be found that the title thereby attempted to be acquired is *defective,* the company may proceed anew to acquire or perfect such title, in the same manner as if no appraisal had been made ; and at any stage of such new proceedings, the court may authorize the corporation, if in possession, to continue in possession, and if not in possession to take possession and use such real estate during the pendency and until the final conclusion of such new proceedings, and may stay all actions or proceedings against the company on account thereof, on such company paying into court a sufficient sum, or giving security as the court may direct, to pay the compensation therefor when finally ascertained ; and in every such case the party interested in such real estate may conduct the proceedings to a conclusion, if the company delays or omits to prosecute the same."

It is argued by the counsel in opposition, that the petitioners do not show that their title is defective within the meaning and legal construction of this section ; that a mere lien or mortgage does not affect the title ; and that the petitioners or the Schenectady and Troy Rail Road Company obtained the legal title through the conveyances from their grantors claiming to derive

title under the sheriff's deed; that although that deed was adjudged to be void for uncertainty, by the decision of the court of appeals, yet that all other proceedings connected with it having been regular, and the purchasers or grantees having entered into possession under it in good faith, claiming title, and they and their grantees and successors having been in such possession with such claim of title since 1831, a sufficient adverse possession is created, and at all events such a one as will authorize a presumption of title and in the petitioners, so far as the heirs of Elias Kane are concerned.   Without proceeding to examine the question whether such adverse possession is established or not, I am of opinion that the petitioners come within the provisions of the 21st section, and that the lien of the mortgage upon the premises described in schedule A, is one of the *defects* contemplated in that section.   Why was it required in the 14th section, that all persons who have estates or *interests* in the real estate to which title is sought to be obtained shall be made parties and be named in the petition, and shall have notice of the proceedings? and in the 15th section, that proof should be made, on presenting the petition, of service of notice on all persons, whose estates or *interests* are to be affected by the proceedings, and that such persons may show cause against the proceedings, as the counsel for Mr. Peck are now willing to do under that section? And why does the 16th section require that the commissioners shall determine and report what compensation shall be made to the party or parties *owning* or *interested* in the said real estate; and why does section 18 declare that on a compliance by the company with all the provisions of the act, all persons who have been made parties to the proceedings shall be divested and barred of all right, estate and interest in said real estate during the corporate existence of the company? The answer to these questions, it appears to me, is plain.   The object of the act undoubtedly was to enable the rail road company to acquire perfect title to the real estate, upon which their road should be located, unincumbered by any lien of mortgage, judgment or otherwise.   The 19th section provides, that if there are adverse and conflicting claimants to the money, or any part

of it, to be paid as compensation for the real estate taken, the court may direct the money to be paid into the said court by the company, and may determine who is entitled to the same, and direct to whom the same shall be paid, and may in its discretion order a reference to ascertain the facts on which such determination and order are to be made; that is, in cases of mortgages or judgments, it may order the moneys to be paid to the owners of them in preference to the owner, or holder of the legal title, or so much as shall be sufficient to satisfy those liens. It is not pretended but that if the holders of this mortgage had been made parties to an original proceeding if one had been instituted under the act, and the title had not been procured by agreement, the claim or lien of the mortgage would have been extinguished. But it is said that the bringing in incumbrancers is merely incidental to the proceedings against the owner of the title. The object, as just remarked, was to enable the company to procure perfect title, and to extinguish all liens upon the property. The 20th section says the court shall have power at any time to amend any defect or informality in any of the special proceedings under the act as may be necessary, or to cause new parties to be added, and to direct such further notices to be given *to any party in interest* as it deems proper. It is said the holder of the mortgage has not such an interest in the land as is intended in the several sections of the act; and that, unenforced, it cannot render the title defective. It is true that a mortgage may be assigned without delivery, and that payment discharges it, and that an outstanding mortgage is not a breach of the covenant of seisin where there has been no foreclosure or entry. (16 *John. R.* 256. 7 *id.* 376.) Nor is it a transfer of title. But a mortgagee has such an interest in the land covered by the mortgage, that he may stay waste; and that interest remains notwithstanding a transfer of the title by the mortgagor, and the intention of the act was to protect his lien as well as to provide for a good title to the company, by requiring him to be made a party to the proceedings, in order that he might receive the money arising from the appraisal, in preference to the mortgagor. If the land should be sold under

the decree upon this mortgage, and bid off, there is no question but that the company could proceed under the 21st section against the purchaser. And are they obliged to wait, until the additional expense of a sale is incurred? I think not; but that they may proceed immediately, and on complying with all the provisions of the act, have their lien extinguished as to the pieces of land in their possession.

It is objected that the petition is defective in not showing an inability to agree for the extinguishment of the mortgage lien; that no attempt to *agree for a discharge* of the lien is stated. The 16th section does not require the *petition to state* that the company has been unable to agree for the purchase, but that the company has not been able to acquire title to the land, and the reason for such inability. The petition states that the company have not been able to obtain a perfect title for the causes stated in it. This is, I think, a sufficient compliance with the terms of the section. It is further objected that no proceedings can be had to perfect the title under the 21st section, unless there has been a previous appraisal. The words of the section are that the party may proceed under it, "if at any time after an attempt to acquire title by appraisal of damages or *otherwise,* the title attempted to be acquired is defective." This language is sufficiently broad to include both cases, as well where the title is attempted to be procured by agreement and purchase, as by appraisal.

It is still further objected, that the Schenectady and Troy Rail Road Company, by the exercise of ordinary diligence could before constructing their road have acquired actual knowledge of the mortgage by a search of the record. The mortgage was given and recorded in May, 1817. The titles were procured in 1841, more than *twenty years* after the date and recording of the mortgage. Searches usually do not extend beyond a period of twenty years; and if they do, it is generally presumed that incumbrances of an earlier period are paid. It was supposed this mortgage was paid, or otherwise extinguished; and the supreme court dismissed the bill of foreclosure. I think the petitioners are not too late in applying for relief, after the decision

of the court of appeals declaring the validity and lien of the mortgage upon the premises. On the whole I am of opinion that the prayer of the petition should be granted, but that the commissioners should be appointed under the act of April, 1854, which provides for the appointment of three commissioners by the court, who reside in the county where the lands are situated, or some adjoining county.

This conclusion is arrived at without reference to section 60, (1 *R. S.* 1242, 4*th ed. ; Laws of* 1847, *ch.* 272, § 3,) which was not referred to by either party on the argument. That section provides for a case where a rail road company shall not have acquired a valid and sufficient title to any land upon which they have constructed their track, or where the title has been or shall be hereafter rendered invalid by reason of any *mortgage, judgment or other lien ;* and the section declares how the company may acquire title in such a case.

It was insisted that if the court had jurisdiction to appoint commissioners, they would be bound to include in their appraisement the value of the improvements or "industrial accessions," inasmuch as the point was expressly passed upon and adjudicated by the court of appeals ; and it was suggested that the court, to prevent subsequent litigation, should direct the commissioners to embrace the value of the improvements in their appraisement. I think the court, at this stage of the proceedings, have nothing to do with that question.

Section 16 prescribes the duties of the commissioners, and directs them to give notice to the parties when they will meet, and it directs them to hear the proofs and allegations of the parties, to reduce the testimony to writing, and make such compensation as shall be just. They are to make report of their proceedings, which report must be confirmed on notice, by the court, who may direct as to whom the moneys shall be paid. The appraisal must be made as the *statute directs,* and the court have no power to vary that direction.

The motion must be granted, and John Willard, George G. Scott and Joseph W. Horton are appointed commissioners. The order must direct that all proceedings on the part of Charles

A. Peck, under his decree, to foreclose his mortgage, be stayed as to the several parcels of land mentioned in the petition, until the further order of the court.

[Franklin General Term, September 4, 1854.  *Hand, Cady, C. L. Allen* and *James,* Justices.]