Gear v. The Dubuque and Sioux City Railroad Co.

# Gear v. The Dubuque and Sioux City Railroad Company.

1. **Railroads:** RIGHT OF WAY: JUDGMENT. A judgment, entered in the usual form of a judgment in action of debt, in a proceeding to condemn lands for the right of way of a railroad, under sections 1314–1331, Revision of 1860, will be construed to have no greater effect than it would have if entered conformably to the statute authorizing it.

Gear v. The Dubuque and Sioux City Railroad Co.

2. ——— CONDEMNATION: ACCEPTANCE. The proceedings under the statute for the condemnation of lands to the use of a railroad, simply fix the price at which, upon actual payment, the company may take the right of way. The judgment assessing the amount of damages passes no title to the company before payment, and does not bind it to accept the lands and pay the amount assessed.

*Appeal from Jones District Court.*

TUESDAY, JUNE 19.

PRIOR to February, 1859, the Dubuque and Pacific Railroad Company, being unable to agree with the plaintiff for a right of way for their road over certain lands of the plaintiff, procured a jury to be impanneled under the act of 1853 (Revision, §§ 1314–1331), and the damages assessed. The plaintiff not being content with the assessment so made, appealed to the District Court of Dubuque county. At the February Term, 1859, the appeal was tried and the damages assessed at five thousand and five hundred dollars. The court thereupon rendered judgment " that the plaintiff have and recover of defendant five thousand and five hundred dollars, and cost of suit taxed at fifty-one dollars and forty-eight cents, and that he have execution therefor." At the time the proceedings were commenced the legal title to the real estate through which the right of way was sought, was wholly in the plaintiff, as shown by the records of the county. But in fact the plaintiff had sold and conveyed one undivided half thereof to his son, A. H. Gear, and the deed therefor was recorded after the appeal to the District Court, but before the trial in that court.

By virtue of a decree of the District Court of Dubuque county, rendered at its August Term, 1860, the rights, privileges, franchises, &c., of the Dubuque and Pacific Railroad Company were, in effect, transferred to the defendant, the Dubuque and Sioux City Railroad Company, upon certain terms and conditions, one of which was, that the

indebtedness of the Dubuque and Pacific Railroad Company, for right of way, should be settled and paid for by the Dubuque and Sioux City Railroad Company. Neither company have built any road along the line of the right of way as condemned, but the same was long since abandoned. The defendant has constructed its road on another and different line, and has no use for or purpose to occupy. the right of way through the plaintiff's land. This suit is brought to recover the amount of the said judgment and costs of defendant.

The District Court gave judgment for defendant, and the plaintiff appeals.

*Adams & Robinson, Charles Mason* and *Cooley & Eighmey* for the appellant.

I. A land owner in this State, through whose land a railroad has been located, and in whose favor damages have been assessed under the act of 1853, can maintain an action for his damages before the company has entered. *Neal* v. *The Pittsburgh & Connellsville Railroad Company*, 31 Penn., 19, (under a statute and constitution similar to ours).

II. The rendition of an absolute judgment was the proper practice in the proceedings to condemn; and if not proper, it was a mere irregularity which cannot be corrected in this action. *Kempe's Lessees* v. *Kennedey*, 5 Cranch, 173; *Voorhees* v. *The Bank of the United States*, 10 Pet., 449; *Grignon* v. *Astor*, 2 How., 319.

*J. M. McKinlay* for the appellee.

The railroad company acquired no title until compensation was made; and it was not liable for the value of the land before it reduced it to possession. *Henry* v. *The Dubuque & Pacific Railroad Company*, 10 Iowa, 543.

*Neal* v. *The Pittsburgh & Connellsville Railroad Company*, 31 Penn., 19, is not in point, because the company acted in *bad* faith.

COLE J.—I. The first question which presents itself, and one of no little difficulty, is as to the legal effect of the judgment upon the assessment or verdict of the jury in the District Court, as between the parties to it. The judgment is in the usual form of a judgment in an ordinary action of debt. Our statute provides (§ 1317) that the freeholders appointed by the sheriff shall inspect the real estate and assess the damages which the owner will sustain by the appropriation of his land for the use of the railroad corporation, and make report in writing to the sheriff of the county, who shall file and preserve the same; and if said corporation shall at any time before they enter upon said real estate for the purpose of constructing said road, pay to said sheriff for the use of said owner the sum so assessed and returned to him as aforesaid, they shall be thereby authorized to construct and maintain their railroad over and across said premises. It is then provided that either party may appeal to the District Court within thirty days. The company in all cases to pay costs of first assessment; the costs on appeal to be paid by the failing party.

*1. RAIL-*
*ROAD: right*
*of way:*
*judgment.*

Section 18, of article 1, bill of rights of our State Constitution, provides that "private property shall not be taken for public use, without just compensation first being made," &c. * * * So it is incompetent for either the legislature or the courts to enact or adjudge that the title of property shall be divested, even for public purposes, until compensation is *first* made. In Missouri, with similar constitutional provision to ours, the statute provided that the report of assessment, &c., when made, shall be filed in the clerk's office, "and if no valid objection

Gear v. The Dubuque and Sioux City Railroad Co.

be made to such report, the court shall enter judgment in favor of such owner against such company for the amount of damages assessed, and shall make an order vesting in said company the fee simple title to the land." It was held, that under this statute, even the judgment did not transfer the title, but that actual payment of the damages was essential to the vesting of the title in the company. *Walthu* v. *Warner*, 25 Mo. (4 Jones), 277. Without such statute authority, *a fortiori*, the judgment would not, even as entered in this case, pass any title to the right of way to the company.

When the judgment itself is taken and construed in connection with the proceedings wherein it was rendered, and the statute whereon those proceedings were founded, it may well and reasonably be held to have no greater or other effect, than if it had been, in its language, conformable to the statute authorizing it. But there is one other view in which this construction becomes very legitimate and strictly legal. It is this, that although the District Court is a court of general jurisdiction, yet so far as it acts in the matter of the condemnation of land for the public use, it acts under a special statute authority, and is clothed with no power in that particular, to render any other judgment than such as the statute itself authorizes. Any judgment other or beyond that authorized by the statute, would therefore be without authority so far at least as it exceeded the power conferred by the statute.

II. The next question, presenting itself in order in the case, is, as to the right of the plaintiff to compel or require

2. —— condemnation: acceptance. the company to take the right of way upon the terms fixed by the jury in their assessment, and made the order of the court. We propose to examine this question, as between the parties to the judgment, or order of condemnation, leaving, for the present, the matter of the liability of the defendant in this case

for the performance of the obligations of the Dubuque and Pacific Railroad Company, entirely out of view. The judgment against the latter company is, as we have seen, of no greater or other effect than an order of condemnation, whereby the company, upon the payment of the sum assessed, could have the right to enter and possess for the construction and maintenance of their railroad.

· Our statutes as to the incorporation of railroad companies and. the condemnation of land for right of way, proceed upon an entirely different principle from the English statutes. There, the railroad company in its application to parliament for its charter, must designate the particular lands over which the road is to run; the company being chartered, notifies the owner that it requires his land for its road, and offers him a price; he accepts or declines, with a counter offer; if there is no agreement, a jury is impanneled and they decide between the propositions or assess the amount; the verdict is registered as a conveyance from the owner to the corporation. The company is bound by their charter to procure the particular land, and there is, of course, no receding from, or opportunity for refusal to take the title upon the terms of the verdict or assessment, if there is no prior agreement as to terms between the parties. The company is bound from the time of the notice to take the land at the price fixed by the verdict. *The King* v. *Commissioners,* &c., 4 Barn. & Adol., 333; *The King* v. *Hungerford Market Company,* Id., 327; *Doe* v. *London and Croyden Railway Company,* 1 Eng. Railw. Cas., 257; *Stone* v. *Com. Railway Company,* 1 Id., 375; *Tawny* v. *Lynn and Ely Railway Company,* 4 Id., 615; *Benkinshaw* v. *B. &. O. J. Railway Company,* 4 Eng. L. & Eq., 489; *Regina* v. *Same,* 15 Q. B., 634; and in *Walker* v. *Eastern Counties Railway Company,* 6 Hare, 593, it was held that a party who had received such

notice could sustain a bill for specific performance of the agreement implied by the act of parliament.

But in this country railroad companies are chartered either by special or general law, and are only required to state the termini of their proposed roads. They are thus left free to select the cheapest as well as the most practicable route between such termini, sometimes hundreds of miles apart, and are controlled only by the wish or interest of the company. *Ex parte The South Carolina Railroad Company*, 2 Rich., 434; *North Missouri Railroad Company* v. *Luckland*, 25 Mo., 515. The selection of the precise route may depend upon the present or supposed future commercial or agricultural condition and capacity of the localities traversed, or it may possibly be made to depend upon the cheapness of the right of way or character of the grades. But let it depend upon whatever it may, the right of the company to fix the route primarily, and to change it in advance of (and perhaps after) actual construction, in accordance with their own discretion, is a right which cannot now be questioned.

If the company shall take steps for the condemnation of a right of way, and find the assessment beyond their ability or interest to pay, it may change its route to such locality as may be within their ability to pay or interest to adopt. But, of course, in case of any change of route after proceedings for condemnation are concluded, the company would be liable, not only for the costs, but also for any expense in removing fences or buildings, or forbearance to cultivate the land, if the same were incurred or done at the instance of the company, and upon the faith of its acceptance of the route and assessment. It is true that this construction of the law places it in the power of a railroad company to make changes in their routes and to cause repeated assessments to be made on different routes of the value of the right of way. But the only restraint

upon such a course within the power of the courts is the visitation of the costs and the incidental liability mentioned above. If the right to make such changes and take such repeated proceedings is an evil, it is alone within the power of the legislature to prohibit it.

This question has several times passed under judicial review. In the case of *Neal et al.* v. *Pittsburg & Connellsville Railroad Company,* 2 Grant's Cases, 137; *S. C.,* 31 Penn., it was held, in a very brief opinion, without the citation of an authority or the recital of the statute under which the proceeding was had, that when the damages have been ascertained by a report and judgment thereon, the right of the land owner to such damages is completely settled and he is entitled to execution.

So, in the case of *Webb et al.* v. *The Town of Rocky Hill,* 21 Conn., 468, it was *held,* that where the convenience and necessity of a highway has been regularly acted upon by the court and commissioners and decided, the matter in dispute is *res adjudicata,* and no longer open to litigation. But this case relates to an ordinary public road, and rests upon a different principle from the railroad case under consideration.

The New York authorities, however, as to this question of roads, are *contra.* In *North Missouri Railroad Company* v. *Lackland, supra,* where the statute authorized the court, in proceedings for condemnation, to render judgment against the railroad company for the amount of the assessment and to decree the title to the land in the company, it was held that the company might, at any time before final judgment in such proceeding, change the route of the railroad and dismiss the proceeding. The opinion was delivered by NAPTON, J., and goes no farther than the decision of the case required, and *is very clear,* well reasoned and satisfactory. The authorities cited are quite numerous, and most of them have received our attention

and are found to support the positions to which they were cited.

In *Ex parte, The South Carolina Railroad Co.*, 2 Rich., 434, it was held that of necessity the company must judge of its route, and was not confined to the track which it had once selected for its road, but could alter or change the location as convenience or interest should require.

In *Bursley* v. *The Mountain Lake Water Company*, 13 Cal., 306, this question was thoroughly considered, and BALDWIN, J., delivering the opinion of the court, says: " It is a mistake to suppose that any title comes from mere appropriation of another's property, or from taking the legal proceedings to condemn it. The Constitution is express. Private property shall not *be taken* for public use without compensation. The compensation precedes the title. The compensation must be adequate. But adequate when? Of course, when the property is so taken. *The right* to take on the terms adjudicated, which is a compulsory statutory sale, accrues from the legal proceedings, the petition, the report, the confirmation; then the price becomes fixed. But no right of entry, much less a title, accrues so far. The party condemning, the representative of a State, is then *in a condition to be* a purchaser. · * * * The report and assessment are only effectual to fix a price for the property, *for the purpose of enabling the company to take it at that price* at the time of or within a short period after the assessment and confirmation of the report." And it was held that the assessment and confirmation was *in the nature of an offer by the owner* and must be accepted within a reasonable time or the owner was not bound, and the proceedings became *functus officio.*"

In the case of the *Baltimore and Susquehanna Railroad Company* v. *Nesbit et al.*, 10 How. U. S., 395, where the question was as to the binding effect of a judgment of condemnation, DANIEL, J., delivering the opinion of the

court, says: "From the period of the assessment (1837) to 1844, the record discloses no evidence of any acceptance by the company, of the proceedings under the inquisition, or such at least as could bind them. It can hardly be questioned, that, without acceptance by the act, and in the mode prescribed, the company were not bound; that if they had been dissatisfied with the estimate placed upon the land, or could have a more eligible site for the location of their road, they would have been at liberty, before such acceptance, wholly to renounce the inquisition. *The proprietors of the land could have no authority to coerce the company into its adoption.*"

Without quoting further authorities, it seems to us, that the last cited cases declare the true rule of law; that the proceedings for condemnation simply fix the price at which, upon actual payment, the company may take the right of way, and that it must accept the terms within a reasonable time. If there has been a great enhancement of price between the time of assessment and the acceptance, the owner may have the right to demand a reassessment.

There is another view of this case which would lead to the same conclusion. By our statute the railroad companies of this State are only authorized to take and hold "so much real estate as may be necessary for the location, construction and convenient use of their road." It appears in this case that the real estate in controversy is not only not necessary, but cannot be used for either of those purposes, and hence it would not be authorized to take or hold it, even if willing and anxious to do so. A court would not require a railroad company to do that which it has no legal right or power to do.

Since, therefore, the plaintiff could not require the Dubuque and Pacific Railroad Company to pay the judgment and take the land, it becomes unnecessary to inquire whether the defendant has assumed the liabilities of the

company in this particular. So also is it unnecessary to decide whether the failure of plaintiff to disclose the ownership of an undivided half of the land by his son, A. H. Gear, was a fraud, or whether the offer now to perfect the title by conveyance, would cure any defect in that particular. As to whether an outstanding title or interest in another will authorize the proceedings of condemnation anew, see matter of *New York Central Railroad Company,* 20 Barb., 419.

Affirmed.