Number omitted

HAIG *ET AL.* v. WATEREE POWER CO.

(112 S. E. 55)

1. EMINENT DOMAIN—THEORY UPON WHICH RIGHT BASED.—The right of eminent domain is based upon the theory that when the state originally granted lands to individuals the grant was made under the implied condition that the State might resume dominion over them whenever public interests made it necessary.

2. EMINENT DOMAIN—CONDEMNATION IN EFFECT A COMPULSORY SALE.—The condemnation of land is in effect a compulsory sale, with the compensation fixed in a fair and impartial manner.

NOTE: On right to interest on award in condemnation proceedings, see note in L. R. A. 1916C, 1109.

3. STATUTES—STATUTORY PROCEEDINGS LIMITED BY POWER GRANTED.—
All proceedings in statutory actions are limited by the specific
power granted by the statute, the words of which must be con-
strued in their legal and commonly accepted meaning.

4. EMINENT DOMAIN—PROCEEDINGS CONFINED TO PURPOSES AND PRIV-
ILEGES STATED IN ACT.—The rights and remedies granted by Civil
Code 1912, §§ 3292-3305, relating to condemnation proceedings, are
exclusive, and must be confined within the limits of the purposes
and privileges therein stated.

5. EMINENT DOMAIN—JURY'S VERDICT ON AMOUNT OF COMPENSATION
NOT ENTITLED TO BE ENTERED AS VERDICT ON MONEY DEMAND.—Civil
Code 1912, §§ 3295, 3302, providing that all condemnation pro-
ceedings shall be filed in the clerk's office and be there of record,
and that a jury shall ascertain the owner's compensation and ren-
der their verdict in writing, does not authorize the entry of such
verdict under Code Civ. Proc. 1912, § 324, providing for the entry
of verdicts on money demands.

6. EMINENT DOMAIN—AWARD HELD NOT DUE UNTIL ENTRY.—Where
the condemnation act does not fix a time within which the award
must be paid, it cannot be required until the actual taking or
entry on the land, in view of Civil Code 1912, § 3299, providing
that upon payment of the award the use of the land shall vest in
the condemnor.

7. EMINENT DOMAIN—AWARD GIVES CONDEMNOR OPTION TO PURCHASE
AT PRICE FIXED.—An award in condemnation proceedings merely
fixes the price at which the condemnor may at his option have the
property, and until entry is actually made no obligation rests on
the condemnor to pay the award.

8. EMINENT DOMAIN—CONDEMNOR ENTITLED TO DISMISS PROCEEDINGS
BEFORE ELECTION TO TAKE PROPERTY.—The general rule is that until
the condemnor has elected to take the property, the proceedings
may be dismissed at any time.

9. EMINENT DOMAIN—AWARD IN CONDEMNATION PROCEEDINGS HELD
NOT A "JUDGMENT."—Before condemnor elects to take the property,
an award in condemnation proceedings is not a judgment within
Code Civ. Proc. 1912, § 304, defining a judgment to be the final deter-
mination of the rights of the parties.

10. EMINENT DOMAIN—AWARD HELD NOT TO BEAR INTEREST AS A JUDG-
MENT.—Where *an award in condemnation proceedings* was placed
on the judgment roll, there being no statutory authority for en-
rollment it did not bear interest as a judgment.

11. EMINENT DOMAIN—AWARD BEFORE ELECTION TO ACCEPT HELD NOT
"DUE" WITHIN INTEREST STATUTE.—In condemnation proceedings

before the condemnor elects to take the property, an award is not "due" within Civil Code 1912, § 2516, providing that where any sum of money shall be ascertained and due it shall draw interest.

12. EMINENT DOMAIN—INTEREST ON AWARD ALLOWED UNDER CONSTITU-
TIONAL PROVISION REQUIRING JUST COMPENSATION TO PROPERTY
OWNER.—Where a considerable time elapsed between an award in condemnation proceedings and the taking of the property by the condemnor, the property owner was entitled to interest on the award under Const. art. 1, § 17, and article 9, § 20, prohibiting the taking of private property without giving full and just compensation in return.

Before McIVER, J., Fairfield, October, 1920.   Affirmed.

Action by M. DeL. Haig et al. against Wateree Power Co.   Decree for plaintiff and defendant appeals.

*Messrs. McDonald & McDonald,* and *Osborne, Cocke & Robinson,* for appellant. *McDonald & McDonald* cite: *Whether judgment can be entered on a verdict in condemnation proceedings is open question:* 64 S. C., 450; 72 S. C., 555. *Actions and special proceedings:* Code Proc. 1912, Secs. 1, 2, 3, 4, 5, 6, 8. *Form of civil actions:* Id., Sec. 114. *Commencement:* Id., Sec. 117. *Second part of Code applies only to Court of Common Pleas:* 19 S. C., 143; 10 S. C., 42. *Condemnation is special proceeding:* 95 S. C., 68. *Compensation being given remedy is exclusive:* 2 Lewis Em. Dom., Sec. 872; 11 Rich., 239; 33 S. C., 477; 62 S. C., 52; 68 S. C., 182; 71 S. C., 241. *No right to enter judgment on verdict:* 1 Civ. Code 1912, Secs. 3292-3305. *Nor can any costs except such as are expressly provided for in the Statute be entered:* 12 S. C., 118; 6 Rich., 286; 10 S. C., 40; 17 S. C., 80; 42 S. C., 522; 95 S. C., 168; 76 S. C., 75. *Order necessary before judgment could be entered:* 81 S. C., 81; 10 S. C., 507; 45 S. C., 14; 1 Black Judgts., Secs. 106-110; 15 R. C. L., 577-8. *Interest:* 2 Spear, 594; 47 S. C., 176; 49 S. C., 119. *Parties to condemnation are vendor and purchaser:* 7 S. C., 173; 7 S. C., 324. *Interest has been allowed and re-*

*fused in condemnation proceedings*: 2 Suth. Dams., Par.
336; 4 Id., Par. 109; 2 Lewis Em. Dom., Par. 742; 1
McC., 399; 74 S. C., 486; 24 N. E., 19; 28 L. R. A.
(N. S.), 51; 10 R. C. L., 214; 16 L. R. A. (N. S.), 537;
147 U. S., 282; 159 U. S., 280; 15 Cyc., 1935; 10 R. C.
L., Par. 199; Ann. Cas., 1913-E., 1062.

*Messrs. J. W. Hanahan* and *G. W. Ragsdale,* for re-
spondents.    *Authority to enter judgment on verdict in
special proceeding*: 64 S. C., 451; 69 S. C., 508; 95 S.
C., 68; 6 Rich. L., 286; 2 Lewis Em. Dom., Sec. 785.
*Does judgment bear interest*: 13 Stat., 463; 1 Civ. Code
1912, Secs. 2516, 3302; 15 Cyc., 919; 2 Lewis Em. Dom.,
Sec. 742. *Execution may issue on condemnation verdict*:
15 Cyc., 917, 918, 931, 934; 10 A. & E. Enc., 1185, 1186;
4 Rep. & Mack Dig. R. R. Law, 724-28. *Taking complete
when verdict rendered*: 1 Civ. Code 1912, Sec. 3296;
Lewis Em. Dom., Sec. 742. *And not subject to option
by one of the parties*: 6 Rich. L., 290. *In what cases in-
terest is allowed*: Cheves Law, 61; Bail. Eq., 100; 2
McC., 305; 76 S. C., 308; 16 S. C., 588; 10 Rich., 387.

April 11, 1922.

The opinion of the Court was delivered by ACTING AS-
SOCIATE JUSTICE I. H. HUNT.

The facts in this case are embodied in the decree of his
Honor, the Circuit Judge, which is as follows:

"This action, which is brought for the recovery of
money alleged to be due by the defendant to the plaintiffs
as interest, arises out of a proceeding commenced by the
defendant as petitioner against the plaintiffs herein as re-
spondents for the condemnation of certain real estate
owned by the respondents in that proceeding, for the pur-
poses of acquiring certain easements upon and over the said
real estate, including the right to flood the said lands with
water. Pursuant to an order made by his Honor, Judge

Moore, of the Sixth Circuit, a jury was empanelled by the Clerk of Court for Fairfield County to assess the compensation to be paid by the petitioner in said proceeding to the respondents therein for the easement sought. The jury rendered a verdict on the 6th day of November, 1917, fixing the compensation to be paid at the sum of $30,000. On this verdict judgment was entered and enrolled by the Clerk of Court on the 7th day of November, 1917. From this both petitioner and respondents appealed to the Court of Common Pleas. The appeal was thereupon heard as provided by statute in the Court of Common Pleas. A jury was empaneled to try the issues submitted to them, and rendered a verdict assessing the compensation to be paid to the respondents by the petitioner at the sum of $23,500.00. On this verdict judgment was also entered and enrolled by the Clerk of Court on the 7th day of March, 1918. Notice of appeal to the Supreme Court was served by both sides, but thereafter, on the 3rd day of February, 1919, a provisional settlement was reached by the parties, whereby the principal of the judgment was paid by the petitioner, and by mutual agreement the right of the respondents to demand and receive interest was reserved for decision of the Court. The contention of the plaintiffs in this action, respondents in the condemnation proceedings, is that they are entitled to interest on the amount of the verdict rendered by the condemnation jury, or on the judgment entered on said verdict by the Clerk of Court as reduced by the verdict on appeal, from the date of the condemnation verdict and judgment, November 7, 1917, to the date of payment by defendant of the principal of the judgment on the 3rd day of February, 1919; or, at all events, if not entitled to interest on the ultimate amount found, from the date of the condemnation verdict, that they are entitled to interest on the amount of the verdict and judgment rendered on the appeal from that date, to-wit: from

March 7, 1918, to the date of the provisional settlement made on the 3rd of February, 1919. The contention of defendant is that the plaintiffs are not entitled to interest on the verdict as a sum ascertained and due, nor on the judgment entered on the verdict, the entry of which, it contends, was not authorized or required by law. In the view which I take of the case the plaintiffs cannot recover interest on the amount ultimately found by the jury on appeal from the date of the condemnation verdict rendered by the Clerk's jury, for the reason that the verdict rendered on appeal in the Court of Common Pleas must be presumed, under the rule of past, present, and future damages, to include all sums due to the plaintiffs up to the date of that trial on any account. But as to the verdict and judgment rendered on the appeal, I hold that the plaintiffs are entitled to interest thereon at the legal rate from that date to the time of the payment by the defendant of the principal of the judgment, to-wit: from March 7,1918, to February 3, 1919, which amounts to the sum of $1,485. I hold that the judgment was properly entered and bore interest as such from the date of entry. But if I should be in error as to that, in the view which I take of the question, the verdict rendered by the jury on appeal to the Court of Common Pleas was a sum ascertained and due and would carry interest as such. It is therefore ordered and adjudged that the plaintiffs recover of the defendant the sum of $1,485.00 and the costs of this action."

The exceptions raise the following issues on appeal:

"(1) That his Honor erred in holding that a judgment had been entered and enrolled upon the verdict in the Circuit Court, the contention of the appellant being that there was no order of the Court allowing such entry of judgment, and that same was without warrant or authority of law, and was wholly null and void.

"(2) For error in not holding that there could be no entry of judgment that would bear interest in said proceeding, because said verdict was not rendered in any action in the Court of Common Pleas, and because there is no statute of the State authorizing or allowing entry of judgment upon such verdict, and because no .valid order could be granted permitting the entry of judgment thereon, and that the same was wholly null and void.

"(3) Because his Honor erred in holding that plaintiffs were entitled to interest upon the verdict in the Circuit Court as 'a sum ascertained and due.' Because under the Constitution and statute of the State the compensation so found was only payable before the taking and appropriation of said easement, and the same had been paid by appellant before taking possession of said easement.

"(4) That his Honor erred in not holding that the condemnation statute of the State was exclusive, and that under such statute no judgment upon a verdict could be entered nor interest recovered on a verdict in condemnation proceedings instituted under said statute."

The action herein was brought under certain sec-
1-3 tions of our statute which directs the occasion, the manner and the agencies by which the sovereign right of eminent domain may become operative in South Carolina. That right is based upon the theory that when the State originally granted lands to individuals the grant was made under the implied condition that the State might resume dominion over the property whenever the interest of the public or welfare of the State made it necessary. Its origin antedates constitutional provisions and legislative enactments. It is one of the unwritten laws of all civilized nations. It is justified by the fact that the right of individuals must yield to the public good, and the welfare of the State is paramount to that of the individual citizen. It is a previously existing universal law that lay

dormant in the State until proper legal authorities directed the occasion and the mode through which it may become operative. Under Article 10, Sections 3292 to 3305, inclusive, the General Assembly has directed the occasion and manner of taking the property of a citizen and converting it into public use for the benefit of all the people and the welfare of the State. ' The right of the citizen, however, is hedged about with such provisions and enactments as guarantee and protect him from financial loss. While there is nothing in the nature of a contract between the landowner and the State, or the corporation to which the power is delegated, it is, in effect, a compulsory sale with the compensation fixed in a fair and impartial manner. As this action is a special statutory proceeding, all acts and doings thereunder are limited to the specific power granted therein. Declarations, words, and phrases must be taken and construed in their legal and commonly accepted meaning.

The grounds of appeal, from the decree of the Circuit Judge resolve themselves into two questions for the Court to decide. First, is it legal to enter a judgment from a verdict of a jury in the statutory proceeding, known as the Condemnation Act? Second, does the amount of the award fixed by the jury bear interest at the legal rate from the date of the verdict until the payment of the award?

This proceeding was brought under authority of Sections 3292-3305, inclusive, Vol. 1, Code of Laws 1912. It is a special statutory proceeding with the right of appeal to the Circuit Court. *Railway v. Ellen,* 95 S. C., 68; 78 S. E., 963, Ann. Cas., 1915B, 1042. The rights and remedies granted thereunder are exclusive and must be confined within the limits of the purposes and privileges therein expressed. Section 3295 provides that—

The jury "shall ascertain the amount of compensation which shall be made to the owner thereof, and shall render their verdict in writing for the same."

Section 3296 provides for an appeal to the Circuit Court from the verdict so rendered. Section 3302 provides that—

All proceedings "shall be filed in the office of the Clerk of the Court of Common Pleas for the county in which such proceedings were had, and shall be there of record."

Section 3303 makes provision for the payment of certain costs. There is no provision that the verdict should be entered as a judgment. It is evident that the General Assembly recognized the distinction between a verdict in a proceedings of this nature and a verdict on a money demand. In Section 3953, Vol. I, Code of 1912, in providing for arbitration and award provision was made for an appeal to the Circuit Court, with the further provision that—

The award of the arbitrators "shall be filed with the Clerk (of the Court) of Common Pleas within five days after such finding and when so filed shall become a judgment of the Court of Common Pleas."

In the condemnation act it provides that the proceedings shall be filed in the office of the Clerk of the Court, and "shall be there of record." If the General Assembly had intended that a verdict in a condemnation proceeding should ripen into a judgment, it would have said so, as it did in the statute providing for arbitration and award. It is scarcely probable that the General Assembly, in which were lawyers of marked ability and wide experience, should have unintentionally permitted such an important and far-reaching omission. There is no statutory provision in this State fixing a time within which the award of a jury in a condemnation proceeding must be paid. Section 324 of the Code of 1912 is only applicable to verdicts rendered in civil actions in the Court of Common Pleas, and does not apply to a verdict rendered by a jury under the condemnation statute. Section 3299 provides that, "upon payment of the compensation thus as-

certained," the use of the land for the purpose for which it was acquired shall vest in the condemnor so long as it is used for the required purpose and no longer.

As the statute does not fix a time within which the award must be paid, the amount thereof cannot be required until the time of the actual taking or entry on the land. We know of no statute or decision in this State, and none has been cited, that sustains the position that upon an award the condemnor is obliged to take the property and pay the award. An examination of the holding of the Courts in other jurisdictions reveals the fact that the weight of authority is that, in the absence of statutory provisions on that question, the effect of proceedings for condemnation is simply to fix the price at which the party condemning can take the property sought, and that even after confirmation the purpose of taking the property may be abandoned without incurring any liability to pay the amount of the award. The reason for the rule appears to be that—

"Whenever land is sought to be taken for a public purpose, the public authorities, in the absence of any statutory provision to the contrary, have a reasonable time, after the ascertainment of the expenses of the scheme, to decide whether to accept or refuse the land at the price fixed."

The procedure calls for "a reasonable valuation of the land; and if the public rejects it at the valuation fixed, the landowner suffers, in general, no detriment, and if, in an exceptional case, an injury is done, he is entitled to reparation." Many of the Courts hold that the rule is a necessity in view of the rational conduct of public affairs. "The question whether a projected improvement is wise or unwise, expedient or inexpedient, cannot be answered by any one who is ignorant of the expense that it involves." The legal effect of such procedure is held to be that—

"It compels the landowner to offer the public the required land at an ascertained price, and that, when such price has been finally ascertained, the public has a reasonable time within which to make an election either to accept or reject the offer."

This general principle of law is more fully discussed by Chief Justice Beasley of the Court of Errors and Appeals of New Jersey in the case of *O'Neill v. Freeholders of Hudson,* 41 N. J. Law, 161; Lewis on Eminent Domain (3rd Ed.) Vol. 2, § 955; *Alabama M. R. R. Co. v. Newton,* 94 Ala., 443; 10 South., 89; *Bensley v. Mountain Lake Water Co.,* 13 Cal. 306; 73 Am. Dec., 575; *Florida Central, Etc., R. R. Co. v. Bear,* 43 Fla., 319; 31 South., 287; *Denver & New Orleans R. R. Co. v. Lamborn,* 8 Colo., 380; 8 Pac., 582; *Carson v. Hartford,* 48 Conn., 68; *United States v. Cooper,* 21 D. C. (10 Mackey) 605; *Chicago v. Hayward,* 176 Ill., 130; 52 N. E., 26; *Manion v. Louisville, Etc., R. R. Co.,* 90 Ky., 491; 14 S. W., 532; *Wilkinson v. Bixler,* 88 Ind., 574; *Merrick v. Baltimore,* 43 Md., 219; *Gear v. Dubuque & Sioux City R. R. Co.,* 20 Iowa, 523; 89 Am. Dec., 550; *Williams v. New Orleans, Mobile & Texas R. R. Co.,* 60 Miss., 689; *Commissioners v. Henry,* 38 Minn., 266; 36 N. W., 874; *Sylvester v. St. Louis,* 164 Mo., 601; 65 S. W., 278; *Lidgerwood v. Michalek,* 12 N. D., 348; 97 N. W., 541; *Stacey v. Vermont R. R. Co.,* 27 Vt., 39; *County Commissioners v. McGhee,* 20 Ohio Cir. Ct. R., 201; *Hampton v. Commonwealth,* 19 Pa., St. 329; *Seavy v. Seattle,* 17 Wash., 361; 49 Pac., 517; *Chesapeake & Ohio R. R. Co., v. Bradford,* 6 W. Va., 220. "The effect of the condemnation proceeding is simply to fix the price at which, upon payment, the condemnor may take the land." Corpus Juris, Vol. 20, p. 1082.

The holdings of this Court in the case of *Mauldin v. Greenvile,* 64 S. C. 444, 42 S. E. 202, are not applicable to the case at bar. The cases were each brought under a

special statutory proceeding. While they are kindred statutes, and each can trace its legal genealogy to the sovereign power of eminent domain, the manner of procedure, the cause of action, the pleadings, and facts are different in each case. The Mauldin case was brought under Section 30 of the charter of the City of Greenville; the cause of action, for damages caused by the altering or lowering of the street, or sidewalk, in front of a building, which compelled plaintiff to lower the floor of his building to conform to the grade of the sidewalk. The case was practically a suit for damages already sustained. The verdict fixed the amount of damages, and furnished the basis of a final judgment. Nothing was left optional with either party. The judgment was a final determination of the rights of the parties in the action.

The case at bar was brought under the condemnation statute. The verdict of the jury fixed the value of the future right to flood certain lands of the condemnee. No damage had been done, and no right of the landowner had been invaded. It was optional with the condemnor whether it would take the land at its assessed value or decline to do so. Until the land was actually taken, no obligation rested upon the condemnor to pay the award fixed by the jury. No title vested until payment of the award. There could be no final determination of the rights of the parties in the action so long as the taking of the property, payment of the award, and vesting of the right was optional with either party. "The act of condemnation is not complete until the damages assessed have been paid or tendered." Corpus Juris, Vol. 20, p. 1082. If the condemnor had elected not to take the property, the judgment could not have been enforced, as the landowners' right to compensation had not vested. "The general rule is, the condemnation proceedings may be dismissed, or abandoned, at any time before, but not after, the landowner's right

to compensation has become vested." Corpus Juris, Vol. 20, p. 1079.

In the case at bar, the verdict was rendered on the 7th day of March, 1918, and the landowners' right to compensation did not vest until the condemnor elected to take the property on the 3rd day of February, 1919. Until that time there was no final determination of the rights of the parties. Section 304 of the Code of Laws of South Carolina defines a judgment to be "the final determination of the rights of the parties in the action."

The rule that the landowner is obliged to sell, and the condemnor is not required to take, is an apparent inequality of justice; yet such is the law in this and other States where the statutes have not otherwise provided.

The Circuit Judge erred in holding that the judgment herein was properly entered. Does the amount of the award fixed by the jury bear interest at the legal rate from the date of the verdict in the Court of Common Pleas until the date of payment? As there was no statutory authority to enter and enroll the judgment herein, it has no legal force or effect, and interest cannot be claimed thereunder. Nor can interest attach under authority of Section 2516, Vol. 1, Code of Laws, 1912, which is, in part, as follows:

"In all cases wherein any sum or sums of money shall be ascertained, and, being due, shall draw interest according to law, the legal interest shall be at the rate of seven per centum per annum."

In order to come within the requirements and intention of this section the sum must not only be "ascertained," but it must be "due." While the sum was ascertained by the jury, it was not due until the condemnor elected to take the property and pay the compensation. So long as the assumption of an obligation is optional with either party to a transaction, it cannot be held that the sum ascertained

is due. Therefore the law and the facts of this case do not come within the purview of Section 2516. There is no statute in this State that provides for the payment of interest on an award in a condemnation proceeding. Article 1, § 17, of our State Constitution directs that—

"Private property shall not be taken for private use without the consent of the owner, nor for public use without just compensation being first made therefor."

Article 9, § 20, of the Constitution provides that—

"No right of way shall be appropriated to the use of any corporation until full compensation therefor shall be first made to the owner or secured by a deposit of money."

In the absence of any statute on the subject, the rules governing interest in eminent domain cases are controlled by the constitutional principle requiring just compensation for property taken. 21 Ann. Cas. p. 710; *Geohegan v. U. E. Ry.,* 266 Ill. 482, 107 N. E. 786, Ann. Cas. 1916B, 762. "In the absence of any statutory provisions controlling the subject, the rule in respect to interest must be derived from the constitutional provision requiring just compensation to be made for property taken." Lewis on Eminent Domain (3rd Ed.) Vol. 2, § 742. Upon the rendition of the verdict and fixing the award in a condemnation proceeding the landowner is deprived of valuable rights and privileges that, in the nature of the proceeding, could not have been anticipated or ascertained by the jury. The "taking" of the property being optional with the condemnor, the landowner occupied an uncertain and precarious position. He is practically deprived of all of the rights in his land except naked possession thereof, and that possession may be terminated at any time at the will of the condemnor. Possession is not the only element of value in land. The right to sell, the right to rent, the right to improve, the right to sow and to reap, are all valuable rights which are affected by a verdict in a condemnation

proceeding. Mr. Lewis, in his writings on Eminent Domain (3rd Ed.) Vol. 1, § 65, says:

"If property, then, consist, not in tangible things themselves, but in certain rights in and appurtenant to those things, it follows that when a person is deprived of any of those rights he is to that extent deprived of his property, and hence that his property may be taken, in the constitutional sense, though his title and possession remain undisturbed; and it may be laid down as a general proposition based upon the nature of the property itself, that whenever the lawful rights of an individual to the possession, use, and enjoyment of his land are in any degree abridged or destroyed by reason of the exercise of the power of eminent domain, his property is pro tanto taken, and he is entitled to compensation."

If the amount of the award had been paid on the date of the rendition of the verdict, when the right to take vested in the condemnor, it would have been "just compensation." As the payment was postponed by the condemnor until a future time, the landowners did not receive "full compensation," as contemplated under the Constitution. The difference is the same as between a sale for cash and a sale on time. The plaintiffs herein are entitled to interest under the constitutional provisions requiring just and full compensation for private property taken for public purposes.

The decree of the Circuit Judge is sustained in so far as it holds that the plaintiffs recover from the defendant the sum of $1,485 and the costs of this action.

MR. CHIEF JUSTICE GARY and MR. JUSTICE WATTS concur.

MR. JUSTICE COTHRAN (concurring): Action to recover interest upon a certain verdict rendered in condemnation proceedings instituted by Wateree Power Company, to acquire the right to flood the lands of the Haigs, in the construction and maintenance of a dam for water power development.

The facts are undisputed and are as follows:.

In May, 1917, the power company, contemplating the erection of a dam across Wateree (Catawba) River, at a point where the back water would flood the lands of the Haigs, instituted, as they had the right by statute to do, condemnation proceedings before the Clerk of the Court · of York County, for the purpose of acquiring the necessary easement over said lands. A jury was impaneled under the condemnation statute, and on November 6, 1917, rendered a verdict fixing the amount of compensation to be paid by the power company to the owners of land at $30,000. The power company appealed to the Court of Common Pleas, where the issue was tried de novo, resulting in a verdict of $23,500, on March 7, 1918. On April 8, 1918, the attorneys for the owners of the land, without notice to the power company, entered up judgment upon this verdict, in the Clerk's office. Both parties appealed to the Supreme Court from said verdict, but neither appeal was perfected. On February 3, 1919, the parties arrived at what is termed a "provisional settlement" by which the amount of the verdict was accepted by the power company and paid by them to the owners, with the stipulation that the question of interest upon the award should be submitted to the Court for decision.

On January 31, 1920, this action was instituted by the owners for the purpose of settling the controversy reserved as to interest. The plaintiffs contend that they are entitled to interest on $23,500, the amount of the verdict of March 7, 1918, from November 7, 1917, the date of the award by the Clerk's jury, to February 3, 1919, the date of the payment by the power company, or, if not, to interest upon the $23,500 from March 7, 1918, to February 3, 1919. The defendant contended that no interest at all should be collected, for the reason that they did not take possession of the easement until after they had paid the award of $23,-500 on February 3, 1919.

The case came on for trial before Circuit Judge McIver upon an agreed statement of facts, of which the foregoing is an abstract, but which will be reported in full. As a part of the agreed statement there was submitted an affidavit of the company's engineer, which showed that the property was taken over on March 6, 1919, in preparation for the reservoir; that the dam was completed and for the first time closed in, during the month of October, 1919, prior to which time no water was ponded on the Haig property.

Judge McIver, in a decree dated October 8, 1920, held that the verdict of March 7, 1918, embraced all damages accrued up to that time, including all interest charges; that that verdict was entitled to rank as an adjudication upon which a judgment could be entered, and that such judgment bore interest from that date, March 7, 1918, to February 3, 1919, the date of the payment by the power company; that at any rate it represented a sum ascertained, and as such bore interest. He accordingly rendered judgment in favor of the plaintiffs for $1,485; the interest from February 3, 1919, to the date of Judge McIver's decree, October 8, 1920, apparently having slipped through the net. From this decree the power company has appealed.

There is no appeal from so much of the decree as holds that the award of March 7, 1918, does not draw interest from November 7, 1917. The appeal is accordingly limited to the adjudication that it draws interest from its date to February 3, 1919.

The respondents contend that they were entitled to enter judgment upon the verdict in the Court of Common Pleas, and that as such it bore interest from the date of such entry. Whether the verdict was such an adjudication of the rights of the parties as warranted the entry of a judgment upon it depends upon the question whether or not there was an absolute obligation at that time upon the

power company to take the property so condemned and to respond to the award. "A judgment is the final determination of the rights of the parties in the action." Code, § 304. It seems clear that if the condemnor, after the award has been made, had the right to abandon his project entirely and neither take the property nor pay the award, in other words, if compliance with the award is entirely optional with him, that which is optional does not comply with the definition of a judgment, "The final determination of the rights of the parties." We know of no statute or decision, and none have been cited to us, that sustains the position that upon an award the condemnor is obliged to take the property and pay the award; common experience is to the contrary, and suggestions or efforts to compel the condemnor to take and pay have been abandoned.

The appellant contends that as the verdict does not authorize the entry of a judgment thereupon, it necessarily does not draw interest. This position is equally untenable. In a case where the condemnor, at any time after the award, has the right to pay the award and take the property, but for purposes of his own convenience delays the payment and taking, the owner still being in the possession of the property, the just rule is that the award draws interest as a sum ascertained, and against that interest the condemnor is allowed credit for the value of the use of the property in the meantime by the owner. The reason of the rule is that between the time of the award and payment by the condemnor, the owner has only a qualified use of his property; he may use it as it is, but he cannot improve or sell it except subject to the rights acquired by the condemnation. "From the time of the award, he is practically deprived of his rights to dispose of the land. His possession is precarious, liable to be terminated at any time; he cannot safely rent; he cannot safely improve; if he sows he cannot be sure that he will reap. As he is not

placed in this position by any act of his own, is not a wrongdoer, nor under any contract, there would be no justice in charging him with any assumed value of the use." Lewis, Em. Dom. (3rd Ed.) § 742. To deny the owner such interest would be to deprive him of his property without compensation, and practically to hold, as an assumed fact, that such interest is offset by the value of his precarious possession. At the same time if the owner, undisturbed in his possession in the meantime has received valuable and substantial returns from the property, it is nothing but fair that he account therefor in liquidation *pro tanto* of the interest charges.

As indicated above, however, these principles are applicable only where the condemnor had the privilege, at any time after the award, to pay the award and take the property. In the case at bar, the power company, notwithstanding their appeal from the verdict of $23,500, had the right at any time thereafter to abandon their appeal, pay the award, and take the property; and, notwithstanding the appeal of the owners, the power company had the right under the express provisions of Section 3296, Vol. I, Code of Laws A. D. 1912, to deposit the amount of the verdict with the clerk and take the property for the contemplated purposes.

The agreed statement upon which the case was tried does not show that the use of the property by the owners in the meantime was of any value, and hence, this element of credit to which the power company may have been entitled not appearing, is presumed not to exist.

The judgment appealed from should accordingly be affirmed.

MR. JUSTICE FRASER (dissenting) : I cannot concur with the majority of the Court.

A short statement of the essential facts and a short consideration of the purpose of the condemnation statutes will make the matter clear:

The plaintiff owned a tract of land. That the defendant needed in order to carry out a quasi public use. Private property cannot be taken for a public use until compensation is first made. The condemnation statutes provide a method of determining the amount to be paid before private property can be taken for public use. It is one of the inequalities of the law (but indisputably it is the law) that while the owner must part with his property at the price fixed by the juries, there is nothing in the statute that requires the corporation to take the property at the assessed value, or any other value. The amount of compensation is fixed by the verdicts of the juries. The public service corporation may take the property and pay the assessed compensation or leave it. While the corporation has the right to take the property and pay the compensation as fixed, it is under no obligation to take it. The only thing the verdict does is to fix the compensation to be paid if the corporation shall see fit to take the property. There being no obligation on the part of the corporation to take the property, an absolute judgment cannot be had. The only judgment that can be had is a conditional judgment, that if the corporation shall determine to take the property, it shall, as a condition precedent, pay the compensation. A judgment is a final determination of the matter in issue between the parties. There can be no final determination until after the verdict, and the verdict does not form the basis of a final judgment. The impracticability of making the provisional verdict the basis of a final judgment for so much money is manifest when we look to the consequences of such a judgment. If this verdict can be made the basis of a final judgment, then the condemning corporation must pay interest on it, even though it never takes the land. If the corporation decided not to take the land, then the judgment for money cannot be enforced, and we have the corporation bound in perpetuity (or at least until the bar

of the statute) to pay the interest on an unenforceable judgment. The record shows that the compensation, as fixed by the verdict in the Circuit Court, was paid before the land was taken.

The condemning corporation had the right to pay into Court the $30,000 found by the clerk's jury and take the land. From this finding both sides appealed, and the jury in the Court of Common Pleas found a verdict for $23,500. We are asked to hold that in case of urgent necessity the corporation must pay into Court $30,000 and also pay to the owner interest on $23,500. To require the defendant to lose interest on the $6,500, in excess of the just compensation, as we must assume, and pay interest on the $23,500 already paid into and in the possession of the Court, would be a hardship so great that only absolute necessity would justify it.

It is said, however, that the necessity is found in the controlling authority of *Mauldin v. Greenville,* 64 S. C. 444, 42 S. E. 202. That case is not authority here, and is unaffected by the reasons above stated. In the Mauldin case the taking or damage had already been done. The verdict assessed the damage already done, and furnished the basis of a final judgment. The city had no option. That case was practically a suit for damages for unlawful taking.

I know of no basis for the additional judgment other than that upon which the trial Judge has put it, i. e., that the assessment in the Circuit Court amounts to a final judgment. In this Court we are agreed that it is not a final judgment. It cannot be a new assessment of damages, for it is too well settled that there can be but one assessment of damages, and that assessment must include not only present, but future, damages. It is manifest that a flat rate of 7 per cent. (the legal rate of interest) cannot be the measure of damages. Through A.'s land it may take

cultivated land from which A. derives large revenue. Through B.'s land it may take forest land from which B. derives absolutely no revenue, and yet a flat rate is allowed to both, utterly inadequate as to A. and utterly unmerited as to B.

If damages are to be allowed for the delay, then some just logical and legal basis should be found. I think that a flat rate is arbitrary and neither just, logical, nor legal.

For these reasons I dissent.