# CHARLESTON.

1873.
January
Term.

CHESAPEAKE AND OHIO R. R. CO., VS. BRADFORD.

THE CHESAPEAKE AND OHIO RAILROAD COMPANY
PLAINTIFF, IN THE ACTION AND PLAINTIFF IN
ERROR, *against* CORA P. BRADFORD, LELIAN C.
BRADFORD AND WILLIAM A. BRADFORD, JR.,
DEFENDDANTS IN THE ACTION AND DEFENDANTS IN
ERROR.

Decided February 24th, 1873.

## SYLLABUS.

1. In a proceeding by a Railroad Company to take lands for the use of
   its road, against the owner of the land, it is error for the Court
   on confirming the report of the Commissioners, and ordering the
   same to be recorded to render judgment against the applicant for
   the amount of damages ascertained by the report.

2. At any time within twelve months after the report of the Com-
   missioners has been confirmed, and ordered to be recorded,
   the sum so ascertained, with legal interest thereon, from the date of
   the report until payment, may be paid by the applicant to the per-
   sons entitled thereto, or into Court.

.1878
January
Term.

3. W. made his will and, the 2nd clause thereof is in these words; to wit: "2nd I give and bequeath unto my daughter, Amelia during her natural life, and after death to such children, or child, as she may leave, my interest in the land conveyed to me by Jas. Hewett, by deed bearing date on the 16th day September, 1833, and of Record in the Clerks office, lying above Lens Creek; also, the interest conveyed to me by James Armstrong, in said lands, by deed of record in Clerks office, together with the appurtenances thereunto belonging, excepting therefrom a burial ground in the field, of fifty feet square enclosure. Also so much of my interest in the estate of Leonard Morris, deceased, conveyed to me by James Hewett, and of record in the clerks office. All of that part of my interest, that is, in the old field or River survey, and all my interest that is on the back land above Lens Creek, and the left hand fork on the same. * * * If my daughter Amelia shall depart this life without children or child, then in that event she shall have the right to dispose of the aforesaid property by will, as she may deem fit or best." W. died after making his will, and his daughter has three children, who are infants, and she is still living. In a proceeding to take part of the land devised by the will for the use of an incorporated railroad company, the commissioners appointed to ascertain a just compensation to the owners of the estate, proposed to be taken, in ascertaining the damages, do so, upon the supposition and principle, that the three infant children are the absolute owners in reversion of the estate, without limitation or contingency, after the expiration of the estate of Amelia, and assess the damage to the interest of the three infants, (by name, as being theirs, without limitation or contingency) in the real estate proposed to be taken at $1600, and the court confirmed said report and ordered it to be recorded; and rendered an absolute judgment against applicant for the whole amount of the damages and costs.
HELD, this was error,

4. The applicant to take the property in preparing its petition (or rather attorney) filed in the proceedings, misstates under a misconception, the estate of the three infants in the reversion of the land, and after the Commissioners were appointed, and had adopted such misconception in ascertaining the damages, and who were entitled thereto, and acted upon it and signed their report, and and before it was formerly filed in Court the applicant asked leave of the Court to discontinue the proceeding.
HELD,

That the Court should have dismissed the proceedings under the circumstances and at the costs of the applicant.

1878.
January
Term.

Chesapeake &
Ohio Railroad
Company,
v.
Bradford et als

The case is stated in the opinion of the Court.

*Miller & Quarrier*, and *Laidley & Hogeman*, for Plaintiff.

The appeal in this case is taken from the order of July 8th, 1872, allowing the Defendants to file the commissioner's report, and refusing to discontinue the case on Plaintiff's motion, at its cost; and, from the order of July 15th, 1872, overruling the exceptions to the commissioner's report, and rendering judgment against the Plaintiff in favor of the infant Defendants, Cora P., Lillian C., and William A. Bradford, by name. The matters arising upon the first of the above orders appear more particularly in the three bills of exceptions set out in the record, and which bills also bring up for review the action of the circuit court in permitting the introduction of testimony on motion to discontinue.

We humbly submit that there is error in all the above action of the court below, and for the following reasons:

First. The court should have passed upon Plaintiff's motion to discontinue before permitting Defendants to file the commissioner's report. It was a proper motion to make at any stage of the cause, and when made, should have been decided upon the case as it then stood.

Second. The plaintiff had a right to discontinue the case case at its costs at any time before the report was confirmed.

10 Howard U. S. Supreme Court 395; 7 Johnson's Chy, 49. 1 Wendell, 318; 3 Sandford, 689; 11 Wendell, 154; 10 Maryland 544; 20 Wendell, 618; 20 Vermont, 39; 31 New Jersey, (2 Vroom,) 72; 18 Johnson, 506.

Indeed, the plaintiff in condemnation cases is at liberty to abandon its effort to acquire the legal title· to any tract of land , even after the entry of the order confirming the report and directing the payment of the money, and the defendant could not compel the plaintiff to take it. Under the ordinary and usual order confirming reports it would not be necessary to appeal to accomplish

· that purpose, but tne peculiar order in this case makes the appeal necessary.

1873.
January
Term.

Chesapeake &
Ohio Railroad
Company,
v.
Bradford et als

The right to abandon and discontinue is clearly indicated in the eighteenth section of chapter forty-two of the Code of 1869, in relation to these proceedings. Under that provision the plaintiff has twelve months in which to pay to the owner of the land or into court the amount of the award, if the plaintiff fails to do so it acquires no title to the land which it set out to acquire, nor can it, thereafter, be compelled to pay the amount ascertained to be the compensation therefor. If after that time the plaintiff desires to acquire the title, it is clearly contemplated a new proceeding must be institututed for that purpose.

The fact that plaintiff's attorney carried the report to the clerk's office with other papers in similar cases could not effect the motion to discontinue. The report was not filed by being placed with the papers but could only be filed in court. Moreover, when the report was taken to the clerk's office as well as when finally filed, it bore an endorsement to the effect that plaintiff discontinued the proceedings at its cost.

Third. It was improper to permit any testimony to be introduced on the hearing of the motion to discontinue, especially touching Plaintiffs action in entering upon the land described in the report. Notwitstanding all such action, the Plaintiff had the undoubted right to discontinue.

Fourth. Notwithstanding the matters proved the court should have granted Plaintiff's application to discontinue. The fact that Plaintiff had entered upon the land and built embankments and made excavations was no ground for refusing it, even if the infant Defendants were the absolute owners of the fee in the land. Their remedy, if injured, was not by forcing upon Plaintiff in this proceeding the legal title of the land, but by their actions of trespass, case or ejectment for the unlawful entering.

3 Mass., 406; 7 Mass., 163; 3 Green, (N. J., Chy.,)

1873.
January
Term.

Chesapeake &
Ohio Railroad
Company,
v.
Bradford et als

47; 15 Maryland, 199: 7 Smed & Marshall, (Miss.), 568; 23 Indiana, 623; 34 Maine, 247.

Fifth. The Defendants' object in introducing testimony was evidently to show that some rights to compensation had vested in them, by Plaintiff's action in entering upon the land, and thus prevent a discontinuance. The authorities, however, show that no rights vest in either party until the report is confirmed, in fact not until the payment of money.

3 Sanford, 689; 20 Wendell, 618; 31 New Jersey, 72; 10 Maryland, 544; 27 Vermont, 39; 10 Iowa, 543.

But admitting, for argument's sake, that an entry by plaintiff vested in defendants a right to compensation, where the whole title is in the defendants, can that doctrine be applied to this case? It is evident Plaintiff had entered upon the land long before the institution of this proceeding, under a deed from Amelia W. Bradford who was the owner of a life estate in posssession, as well as the owner of a contingent estate in remainder. The record shows she was in life at the time the motion was was made. This deed conveyed the estate of Amelia W. Bradford in the land, and authorized an entry thereon, and the actual use thereof by the plaintiff. By the entry under this deed no rights had become vested in the Defendants against the Plaintiff to compensation or anything else. The rights of the Plaintiff in the land were, indeed, greater than those of the Defendants. The Plaintiff occupied the place of Amelia W. Bradford, and if she survived the defendants, the Plaintiff would, under the deed, acquire the absolute estate in fee.

Sixth. It was certainly error to overrule the first exception endorsed on the report. Admitting for the present that the commissioners could properly assess the value of the contingent remainder in the land taken, and the damages to that interest in the residue of the tract,

without, at the same time, ascertaining the value of the particular estate on which it is founded, it was manifestly error in the commissioners to report that the infant Defendants were entitled to that value. Their interest in the remainder is at best a contingent interest, which may be defeated, and in that event the assessment in their favor would be an illegal and unjust act to the party who would actually become entitled to it. In this case that party would be the Plaintiff, who, by purchase, has already acqured an estate that may turn out to be superior to that of Defendants.

Seventh. It was also error in the Court to render judgment against the Plaintiff on this award in favor of the Defendants. Instead of entering judgment thereon for the Defendants, the court should have taken the custody of the amount awarded, provided for its preservation, and, on the happening of the contingency which determined the estate in remainder, provided for its payment to the party in whom the remainder vested. Sec. 20 chap. 71 Code 1869.

Eighth. But the commissoners wholly failed to discharge the duty required of them by the fourteenth section of chapter forty-two of the Code of 1869, and the order appointing them. They were required to ascertain a just compensation for the land described in the application, and for damages to the residue of the tract beyond the peculiar benefits to be derived in respect to such residue, &c. Instead of doing this they ascertained the value of a particular interest, which, it is submitted, they could not do with anything approximating accuracy, as a matter of fact, and without a direct violation of law.

The twenty-third section of chapter forty-two of the Code provides how the value of different interests in a tract is to be ascertained. It clearly shows that it is not to be done by the commissioners. It was, therefore, error in the court to overrule the third exception endorsed in the report.

29

*1873.
January
Term.*

Chesapeake &
Ohio Railroad
Company,
v.
Bradford et als

1878.
January
Term.

Chesapeake &
Ohio Railroad
Company
v.
Bradford
et als.

Ninth. But the form of the judgment is wrong. It is a recovery in favor of the infant defendants by name, when it could only be in the name of their guardian.

Tenth. It is, moreover, wrong as a recovery in favor of the infant Defendants, because the interest of each is not only contingent upon their surviving the mother, Amelia W. Bradford, but also contingent upon all of them surviving their mother. The remainder is not vested in the children born of Amelia W. Bradford, but in such children as may survive her.

Eleventh. It is moreover wrong in being in the form of a recovery. The seventeenth and eighteenth sections of chapter forty-two do not contemplate a recovery, but a mere confirmation of the report, and its recordation on the chancery order book. When that is done the plaintiff has twelve months in which to accept or reject the award. No recovery authorizing execution is provided for, except under the twenty-first section of the same chapter, in which provision is made for those cases where a report fixing the amount of compensation is made, the money paid and the report set aside. If by a subsequent report the amount of compensation is increased, then, in cases where by payment as aforesaid the title has vested in plaintiff, judgment may be rendered for the excess, but in no other class of cases.

For the various errors thus noticed, and for others appearing in the record, the court should, in our judgment, reverse the orders appealed from and allow plaintiff to dismiss the proceedings.


HAYMOND, President.

Petitioner, the Chesapeake and Ohio Railroad Company, on the 25th day of October, 1870, filed its petition in the Circuit Court of Kanawha county, representing that the line of its road had been located by its engineers through and over certain lands therein mentioned and described, giving the boundaries of the land sur-

veyed for its railroad. And in its petition the company represented that it proposed to take for the purposes of its road the lands embraced within the boundaries named, under, and by virtue of its acts of incorporation. And the company in its petition represents that Amelia W. Bradford has a life estate in the lands within the boundaries named, and that Cora P., Lillian C., and William A. Bradford, Jr., all children of the said Amelia W. Bradford, and infants under the age of twenty-one years, are the owners of the remainder in the said lands, and as such, are entitled to compensation from it for taking the lands and constructing and using its railroad through the same. The company states in its petition that Amelia W. Bradford, as tenant for life of said lands, has conveyed her life interest therein to it, by deed. duly executed and recorded; and that Amelia W. Bradford was the guardian of her said infant children, duly and regularly appointed. And the company in and by its petition prayed the Circuit Court to appoint five disinterested freeholders, commissioners to ascertain what would be a just compensation to the persons entitled thereto, for the real estate so proposed to be taken, and for such other and further orders and proceedings as should be necessary to entitle it to the lands.

It is agreed by the counsel in the cause, by a writing signed and filed by them with the papers, that Amelia W. Bradford, guardian of the infants, and the infant Defendants, had legal notice of the filing of the petition in the Court below, and that said Amelia W. Bradford is the legal guardian of the infants. After the filing of the petition and legal service of notice on the guardian and infants according to law in such case, and at a Circuit Court of the county of Kanawha, held on the 26th of October, 1870, the Court determined that the company had the lawful right to take the lands for the purposes stated in its petition. And thereupon, five commissioners were chosen and appointed in the mode pre-

1873.
January
Term.

Chesapeake &
Ohio Railroad
Company
v.
Bradford
at als.

1873.
January
Term.

Chesapeake &
Ohio Railroad
Company
v.
Bradford
et als.

scribed by law, to ascertain a just compensation for taking the lands described in the petition, and to whom the same should be paid ; and that they report their proceedings under the order of their appointment, to the Court as soon as convenient. Afterwards, on the 8th day of July, 1871, the Court, in consequence of the commissioners theretofore appointed not being able to agree, caused to be chosen and appointed, five other commissioners to act in lieu of the former commissioners, (who were removed,) with the same powers and duties, and for the same purposes as directed by the former order. Afterwards, on the 25th day of November, 1871, by consent of the parties, the order entered in the cause on the 8th of July was set aside by the Court, and five other commissioners were chosen and appointed for the purposes stated in the petition, and who were ordered by the Court to ascertain a just compensation for taking the lands described in the petition, and to whom the same should be paid ; and that they make report of their proceedings under the order of their appointment, to the Court as soon as convenient. The commissioners last appointed acted on the 3d day of April, 1872, and in their report, of that date signed by three of them, they say " we find that Amelia W. Bradford has conveyed her life estate in the real estate to the applicants, and are of the opinion that sixteen hundred dollars will be a just compensation for the interest of Cora P., Lillian C., and Wm. A. Bradford, infant children of said Amelia, in the real estate hereinbefore described, which is proposed to be taken by the applicant, as well as for damage to the interest of said infants in the residue of the real estate of the Defendants, beyond the peculiar benefits that will be derived by the interest of said infants in respect to such residue from the work to be constructed." Afterwards, on the 8th day of July, 1872, the company, by its attorneys, asked leave of the Court to discontinue the proceedings ; and, on motion of the Defendants, time was granted them to show cause

against the company's motion; and at the same time, on motion of Defendants, the report of the commissioners before referred to was ordered to be filed. The Court afterwards, on the same day, after hearing the evidence as well for the motion of the company to discontinue their proceedings, as against the motion, overruled the motion. And thereupon the company tendered three several bills of exceptions to the opinion of the court in overruling its said motion which were duly signed and made a part of the record. The company also filed three exceptions to the report of the Commissioners which appear at large in bill of exceptions No. 2; and are as follows, to wit:

1873
January
Term.

Chesapeake &
Ohio Railroad
Company
v.
Bradford
et als

"1st. Because the Commissioners erred in awarding the entire damages assessed in this case to the children of Amelia Bradford, when the interest of said children in the land mentioned in the petition is contingent upon their surviving the said Amelia W. Bradford, which event may not happen.

2nd. Because the sum awarded is exorbitant and unconscionable.

3rd. Because the Commissioners did not ascertain the value of the land taken and damage to the residue of the tract, but merely ascertained the interest of the children of Amelia W. Bradford in such land damages. It was proven to the court that all the claim, right or title, of Amelia W. Bradford, and her children, in and to the lands proposed to be taken by the Company; for the purposes in its petition stated, was, and is conferred, and claimed from and under the will of Luke Wilcox, deceased, and the clause thereof which is in these words, to wit: 2nd. I give and bequeath unto my daughter Amelia, during natural life, and after her death, to such children or child as she may leave, my interest in the land conveyed to me by Jas. Hewitt, by deed bearing date on the 16th day of September, 1833, and of record in the clerk's office, lying above Lens Creek; also, the interest conveyed to me by James Armstrong in said lands, by deed of record in the

1873.
January
Term.

Chesapeake &
Ohio Railroad
Company
v.
Bradford
et als.

clerk's office, together with the appurtenances thereunto belonging, excepting therefrom a burying ground, in the field, of fifty feet square enclosure. Also, so much of my interest in the estate of Leonard Morris, deceased, conveyed to me by James Jewitt, and of record in the clerk's office. All of that part of my interest that is in the old field or River survey, and all my interest that is on the back land above Lens Creek, and to the left hand fork on the same. Also the following slaves, and personal property, to wit: Fifteen negro slaves, named Charles, Charlotte, and her children, Judy, Nancy, Alfred, Dan, Julia, Ann, Harriet, and William and Steptoe Dennis, Kate, Jasper, and Mark, together with the increase of the female slaves. Also all my household and kitchen furniture, of every kind whatsoever; also, all the books contained in my library. If my daughter, Amelia, shall depart this life without children or child, then, in that event she shall have the right to dispose of the aforesaid property as she may deem fit or best."

Amelia W. Bradford, the mother of the infants, is still living, and if the infants are entitled to damages for the land proposed to be taken, they are so entitled, by reason alone of the clause of the will above quoted, as fully appears from the proof in the case.

The court overruled the exceptions taken to the report of the commissioners, by the Company, and rendered judgment upon the report in favor of the infants, Cora P. Bradford, Lillian C. Bradford, and William A. Bradford, against the Company for the sum of $1600, the damages assessed by the Commissioners with legal interest, from the 3rd day of April, 1872, and their costs by them about their defence expended, including a docket fee of $20, as allowed by law.

From this judgment and the order of the court overruling the Company's motion to discontinue proceedings, the Company has appealed.

The 2nd Section of Chapter 42, of the Code, provides, that, "In any case in which real estate may lawfully be

1873.
January
Term.

Chesapeake &
Ohio Railroad
Company
v.
Bradford
et als.

taken for a purpose of public utility, application may be made to the Circuit Court of the County in which the estate is situated, to appoint Commissioners to ascertain a just compensation to the owners of the estate proposed to be taken."

The 4th section of same chapter provides that, "That the proceedings may be instituted jointly against all the owners of the real estate proposed to be taken."

The 6th section provides that of the application ten days notice shall be served on the owners, claimants, and persons holding liens, and that the notice may be given either before the application for condemnation is presented to the court, or afterwards. The 7th section provides, "If an owner or person holding such lien or claim be under disability, and there be a guardian or committee for him, such guardian or committee shall be notified." The 10th section provides that "Upon its appearing that the proper notice has been given, and that the case is one in which the applicant has lawful right to take private property for the purposes stated in the application upon just compensation, five disinterested freeholders, shall be appointed commissioners to ascertain what will be a just compensation to the person entitled thereto for each parcel of real estate proposed to be taken."

By reason of a special act of the Legislature applicable to this Company three of the Commissioners signing the report is sufficient as was done in this case. The 14th section provides what the commissioners shall do, and prescribes the plan of their report, a part of which is "we have viewed the real estate owned by —— mentioned in the said application, and are of opinion that —— will be a just compensation for so much of the said real estate as is proposed to be taken by the said applicant, as well as for damage to the residue of the said real estate beyond the peculiar benefits which will be derived in respect to such residue from the work to be constructed." The 17th

1873.
January
Term.

Chesapeake &
Ohio Railroad
Company
v.
Bradford
et als.

Section provides that when the report has been returned unless good cause be shown against it, or it be defective or erroneous on its face, the court shall confirm the same, and order it to be recorded on the chancery order book. The 18th section provides that at any time within twelve months after the report has been confirmed, and ordered to be recorded the sum so ascertained with legal interest thereon from the date of the report until payment may be paid by the applicant to the persons entitled thereto, or into court, and that upon such payment, the title to that part of the land so paid for shall be absolutely vested in fee simple, except that in case of a turnpike or other road, (not including, however, a railroad,) the right of way only shall be vested. The 19th section provides. "If good cause be shown against the report, or if it be defective, or erroneous on its face, the court, as may seem to be proper, may set it aside or recommit it, &c." The 20th section provides, that "After such report has once been made, though it be set aside, recommitted or new Commissioners appointed, the applicant, upon paying into court the sum ascertained by such report, with legal interest thereon from the date of the report, until payment may, notwithstanding the pendency of further proceedings, enter upon, take and use for the purpose specified in the application, that part of the land in respect to which such payment is made." Section 21 provides, that "When after such payment into Court as is mentioned in the preceding section, a subsequent report is made, which is confirmed, and ordered to be recorded, if the sum ascertained by such subsequent report exceed what was so paid, and the applicant fail to pay the same, judgment shall be given against him for the amount of such excess with legal interest thereon from the date of such subsequent report until payment; but if what was so paid exceed the sum ascertained by such subsequent report, the excess shall be paid back to the applicant, out of the fund in Court, or by the person to whom it shall have

1873.
January
Term.

Chesapeake &
Ohio Railroad
Company
v.
Bradford
et als.

been paid." Section 22nd provides that, "When judgment is rendered against the applicant, pursuant to the last section, for any excess ascertained by such subsequent report with interest, the applicant shall, thereafter, have no right to the possession of the land until the judgment is satisfied. But from the time of such satisfaction by the payment of the money to the persons entitled thereto, or into Court; or from the time of the confirmation of such subsequent report, if no additional compensation be thereby ascertained, the title to that part of the land for which such compensation has been made, shall be absolutely vested in the applicant in fee simple, except, as before excepted, in case of a turnpike or other road." The 23d section provides that, to enable the Court to dispose properly of any money so paid into Court it may have inquiry made by a Commissioner to ascertain what persons are entitled thereto, and in what proportions, and may direct publication to be made requiring all to appear before the Commissioner, that their respective claims may be passed upon. Upon report of the Commissioner or from the evidence before it without such report, the Court shall make such disposition of the money, as may seem to it right. It is further provided that in cases not otherwise provided for, the applicant shall pay the costs of the proceedings, and a reasonable docket fee to be fixed by the Court, but not to exceed $20, may be allowed to any party, if it seems proper to the Court.

I have stated with particularity the substance, and mostly the language of the chapter of the Code, touching this case, to the end that my views as hereafter stated may be more clearly appreciated and understood.

It is a fundamental principle contained in the Constitution of the United States, and the Constitution and Laws of this State that private property, shall not be taken for public use without just compensation. And with us it cannot be taken against the will of the owner, unless such taking has been authorized by law. The

1878.
January
Term.

Chesapeake &
Ohio Railroad
Company
v.
Bradford
et als.

justification for taking private property from its owners for public use, is that, the public interest, and public good are paramount in magnitude, and importance to private interest, and, therefore, private interest must yield to that of the public. Still the just respect of these who constitute the public, for private right, and private interest, has hitherto been so strong, as to induce the Constitutional provisions that "private property shall not be taken for public use without just compensation." This is a wise and salutary provision. It should be strictly adhered to and not suffered to be evaded or perverted. It will be seen by careful attention to the sections of law which I have quoted, that it is not the mere ascertainment of the value of the property proposed to be taken according to the forms of law, that authorizes the invasion or taking of the property of the private citizen by a corporation organized for purposes of internal improvement, nor is it the confirmation of the report of the Commissioners by the Court, nor both together. It is the payment of the value of the property taken, ascertained in the manner provided by law. The mode of ascertaining the value of the property is prescribed by law to enable the applicant to take the property from the owner, if he desires so to do by making the compensation within twelve months after the report of Commissioners has been confirmed. If he fails to pay the ascertained value within that period it is claimed with plausibility that he no longer has the privilege of invading or taking the property by paying the ascertained value. If after the expiration of twelve months the applicant still desires the property, it is claimed and has been held by some Courts, that he can not take it or acquire right to it, against the will of the owner without again having its value ascertained as before. It is not intended by the law that because the applicant has the value of the property ascertained, and the report of the Commissioners affirmed by the Court, that the applicant shall therefore pay the value, and become in--

1878.
January
Term.

Chesapeake &
Ohio Railroad
Company
v.
Baadford
ef als.

vested with the fee simple right to the property. When the value of the property is ascertained he may find that he does not need it; that it is not necessary to take it from the owner. But it is intended that the applicant shall not be in anywise authorized to take or injure the property, unless the ascertained value of the property is paid within the time prescribed by law. And if the applicant after the value is ascertained at any time after the confirmation, and recordation of the report, takes or injures the property without first paying the ascertained value, he is a trespasser, just as though he had never caused the value of the property to be ascertained, and is liable to be treated, sued and mulcted in damages therefor, as any other trespasser. It is, therefore, evident that it is not the meaning or intention of the law, that a personal judgment shall or may be given against the applicant for the ascertained value of the property, except when he pays into Court the amount ascertained by the report of Commissioners, and a subsequent report of Commissioners is made, (which is confirmed and ordered to be recorded,) and which ascertains damages in excess of the amount before ascertained. In this case, as well as all others, the applicant may at any time within twelve months after the report has been confirmed and recorded, pay the sum ascertained with its legal interest from the date of the report until the payment, to the persons entitled thereto, or into Court, and upon such payment the title vests in fee simple in the applicant. Still, in this case, the Court rendered an absolute judgment against the applicant at the time of confirming the report for the amount of damages, as well as, the costs, and from anything that, appears an execution, could at any time issue after the judgment for the whole amount thereof, against the applicant, though the twelve months may not have expired. If the applicant pays the ascertained value into Court after the return and confirmation of the report, such payment and the re-

1873.
January
Term.

Chesapeak.. &
Ohio Railroad
Company
v.
Bradford
et als.

corded proceedings, are his justification for taking the property, because altogether they invest him with the fee simple title to the property, with the exceptions mentioned in the laws. Without the payment of the ascertained value within the time specified, the applicant has no authority or license to take or injure the property more than any other person, and if he does, he is a wrong doer and is liable to be treated as such in every respect.

I very much doubt, whether it is competent, under the law, for the Commissioners to ascertain an amount less than the full value of the whole title to the land proposed to be taken, though I do not determine that question as I deem it unnecessary. The Commissioners in ascertaining the compensation to be made to Cora P. Lillian C. and William A. Bradford, evidently acted upon the supposition that they were the owners of a vested remainder in fee simple in the lands after the determination of the life estate of their mother, subject to no limitation or contingency, and ascertained and fixed the compensation accordingly. The Circuit Court in confirming the report was, doubtless impressed with that opinion. A careful examination of the clause of the will of Wilcox, which I have quoted, must dispel that view as being erroneous. The estate conferred by the will, exclusive of the vested life estate, I think, amounts to a contingent remainder. It certainly is not a vested remainder without limitation or contingency. If the children to whom the compensation is made, by the report, should survive their mother, and no other child be born before the mother's death, then they become the owners of the property, and would be entitled to the whole of the compensation given, but they may die before their mother, and another child may be born and survive the mother, or the mother may survive all her children. If this be the correct view then it would be wrong to pay the ascertained compensation to the three children named, for another person or persons may be entitled

1873.
January
Term.

Chesapeake &
Ohio Railroad
Company
v.
Bradford
et als.

to demand and receive it. In proceedings to take the property of the owner the Court must pursue the Statute conferring the jurisdiction, in its orders and judgments. The whole authority of the Court in such case is conferred by the Statute. The Counsel for the Company in preparing the petition, which was filed, evidently, at the moment, misapprehended the character and extent of the estate, of the three children of Mrs. Bradford. But, afterwards, discovered the error, and sought to correct it as far as possible, by moving the Court to dismiss the proceedings. If the Court had dismissed the proceedings when the motion was made, it should have done so at the cost of the Company. As the proceedings were commenced in apparant error and misapprehension I think the Circuit Court should not have confirmed the report of the Commissioners, and erred in not dismissing the proceedings at the cost of the applicant.

For these reasons the judgment of the Court below against the Appellant rendered on the 15th day of July, 1872, and the order of the same Court made on the 18h of July 1872 overruling the motion of the Appellant to discontinue, the proceedings must be reversed with costs to the Appellant in this Court. And this Court proceeding to give such judgment as the Court below should have given, the report of the Commissioners filed in the Court below must be set aside and the proceedings dismissed, and judgment against the Appellant in favor of the Appellees for their costs, including a docket fee of $20, up to, and including the 8th day of July, 1872.

PAULL, MOORE and HOFFMAN, Judges, concur in the foregoing opinion.