JAMES CALLISON, et al., Appellants, v. WABASH RAILWAY COMPANY, Respondent.

JAMES CALLISON, et al., Respondents, v. WABASH RAILWAY COMPANY, Appellant.*

Kansas City Court of Appeals. March 2, 1925.

1. EMINENT DOMAIN: Where Life Tenant and Remaindermen Were in Possession of Land Under Recorded Deed, Railroad Thereafter Taking Right of Way Held to Have Notice of Their Title. Where life tenant's deed was of record, and she, and her children, as contingent remaindermen, were in possession of land at time railroad entered and took possession of strip for right of way, the railroad company, and its grantees, had notice of title of life tenant and remaindermen.

2. DEEDS: Life Estate: A Deed to a Person and the "Heirs of Her Body" Held to Convey to Grantee a Life Estate With Contingent Remainder. Under section 2267, Revised Statutes 1919, a deed to a person, and the "heirs of her body" *held* to convey to grantee a life estate, with remainder to those who should answer the description "heirs of her body" at the date of her death.

3. Remainders: Contingent Remainder May be Sold and Disposed of Prior to Time of Its Vesting. A contingent remainder interest in land may be sold and disposed of prior to time of its vesting by the death of the life tenant.

4. EMINENT DOMAIN: Contingent Remaindermen Held Not Entitled to Maintain Action Against Railroad for Value of Land and Damage

(271)

to Estate. Prior to death of life tenant, contingent remaindermen could not maintain an action against railroad company to recover value of land taken for right of way and damages caused thereby to balance of tract of land.

5. **LIMITATION OF ACTIONS:** Right of Contingent Remaindermen to Maintain Action Held Not Barred, Though Action of Life Tenant Had Been Barred by Statute of Limitation. Limitations in favor of railroad as to remaindermen's right to maintain an action against railroad company for appropriation of part of tract of land and damages to rest thereof, *held* did not begin to run until death of life tenant, although action by life tenant was barred prior to her death by twenty-four-year Statute of Limitation, section 1307, Revised Statutes 1919, as it existed prior to Amendment of 1917.

6. **ADVERSE POSSESSION:** Prescription: Prescriptive Rights Cannot be Claimed Against a Party Legally Incapable of Making an Effective Grant. Prescription is based upon the presumption of a grant, but prescriptive rights cannot be claimed against a party who is legally incapable of making an effective grant.

7. **DEEDS:** Finding That Right of Way, by Mistake, Was Not Excepted from Deed, Held Proper. Finding that deed of life tenant and contingent remaindermen, not intended as conveyance to railroad of right of way, or of claim, which remaindermen might have against railroad after death of life tenant, growing out of establishment of right of way, *held* not erroneous.

8. **EMINENT DOMAIN:** Refusal to Permit Contingent Remaindermen, After Death of Life Tenant, to Recover Damages to Estate Caused by Taking Right of Way, Held Error. In action by contingent remaindermen, after death of life tenant, refusal to permit them to recover from railroad value of land appropriated for right of way and damages to estate, *held* error.

9. **REMAINDERS:** Deed of Contingent Remaindermen Held Not to Pass Their Right to Claim Damages Against Railroad. Deed by contingent remaindermen of land to railroad, through which railroad established right of way, *held* conveyance of their prospective inheritance subject to damage by railroad, and not to pass their right to claim damages against railroad for injury to estate.

*Corpus Juris-Cyc. References; Adverse Possession, 2 C. J., p. 291, n. 6. Courts, 15 C. J., p. 939, n. 59. Deeds, 18 C. J., p. 156, n. 42 New. Easements, 19 C. J., p. 877, n. 17. Eminent Domain, 20 C. J., p. 672, n. 20; p. 854, n. 32; p. 855, n. 34 New; p. 858, n. 67; p. 1184, n. 67; p. 1186, n. 94; p. 1206, n. 15. Estates, 21 C. J., p. 937, n. 99; p. 984, n. 64; p. 1000, n. 70; p. 1013, n. 59.

Appeal from the Circuit Court of Randolph County.— *Hon. A. W. Walker,* Judge.

AFFIRMED.

*Lamb & Lamb* for plaintiffs.

*Homer Hall, M. J. Lilly* and *J. A. Collet,* for defendant.

ARNOLD, J.—This is an action brought to recover the value of land actually taken, and damages caused to the rest of the tract, by reason of the appropriation of a right of way and the building thereon of a line of railroad through an eighty-acre tract known as the east half of the northwest quarter of section 3, township 53, range 17, in Chariton County, Mo.

Samuel Williams, patentee of the tract, conveyed the eighty (his wife joining in the deed) to his daughter "Nancy Jane Callison (late Nancy Jane Williams) and unto her and the heirs of her body" on June 11, 1859. At some date thereafter (not definitely fixed but manifestly not long after the conveyance of said land and certainly before the appropriation of the right of way strip through the same), Nancy J. Callison, with her husband, moved onto said land, improved and cultivated the same and lived upon it as her homestead continuously until March 2, 1909. During this period all of Nancy Jane Callison's children were born and attained their respective majorities.

Some time in the year 1869 and while said Nancy Jane Callison and her husband were on said eighty, together with their two children then born, the North Missouri Railroad Company (defendant's predecessor in the ownership of the Wabash Railroad) located, graded and fenced a right of way 100 feet wide for its railroad across said eighty in such manner as to appropriate

three and one-tenths acres of land and divide the eighty into a large portion north of the right of way and about twenty acres south of it. There were cuts and fills made on said right of way across said land, and, from that time to the present, said right of way has been continuously used as a part of the main line and two switches of its railway by said railroad company and its successors, including the defendant.

There is no record of any condemnation proceedings to acquire said right of way, nor is there any evidence to show any right on the part of the railroad to take and occupy said land, or the payment of any compensation therefor or damages to the rest of the tract.

On March 2, 1909, Nancy J. Callison and her children, who were all then of age, executed a warranty deed to the land to William O. Draper and Alice C. Draper his wife, and Nancy J. Callison moved off of said tract and gave possession thereof to them. The deed to the Drapers described all of the eighty except about ten acres in the southwest corner thereof theretofore deeded by Nancy J. Callison and her children to various individuals, and with which ten acres the present case is not concerned, as plaintiffs expressly disclaim any desire to seek damages because of it. No exception or mention of the railroad right of way was made in the deed to the Drapers. This, however, was corrected by a deed from Draper and wife back to the children of Nancy J. Callison, after her death, describing said right of way, and reciting that the deed was made in consideration of "correction of description." Draper testified that they did not intend to buy and did not buy the ground occupied by the right of way, but only the part north of the right of way and ten acres south thereof; and when he examined his deed and saw that the right of way was not excepted therefrom, he quitclaimed to the Callison heirs, together with "any right of action they (the Drapers) may have against the Wabash railway company for damages for the taking of said railway right of way."

. Nancy Jane Callison died on December 25, 1920, leaving as the only heirs of her body, James Callison, Annie L. Lusher, Leota Feasell and Susan Freeman. Thereafter Susan Freeman died intestate, leaving as her only heirs, her husband and administrator James Freeman, and her children, Samuel Freeman and Lenna Vandeventer. These and the other children of Nancy Jane Callison are the plaintiffs in this suit which was instituted November 27, 1923.

The amended answer set up that more than fifty years ago the North Missouri Railroad took possession of said strip and built a railroad thereon, and it and its successors have occupied it thus ever since, and that this defendant and its grantors have held open, notorious and adverse possession thereof for more than thirty years, and that whatever cause of action resulted from the appropriation of said strip arose more than sixty years before the institution of the suit, and the plaintiffs cause of action is now barred by the Statute of Limitations.

The amended answer further set up the deed of March 2, 1909, from Nancy J. Callison and her children to William O. Draper and wife, and alleged that by reason thereof all interest in said eighty, including whatever cause of action the Callisons had for the alleged wrongful appropriation of said right of way, passed to and vested in the Drapers, and such cause of action, if any, is now by the Statutes of Limitations.

The reply denied these matters and asserted that the inclusion of the right of way in the Drapers' deed was by mistake and without the knowledge and consent of grantors and grantees, and no right of action, present or future, in fact passed by said deed; and also set up the correction thereof by said quitclaim deed back to the Callison heirs.

The case was taken on change of venue to Randolph county and there tried before the court without a jury. The court filed findings of fact and conclusions of law,

in the course of which it was held that Nancy J. Callison's "life estate in the easement for a right of way in said strip became divested out of the life tenant and vested in the defendant's grantors by the twenty-four-year Statute of Limitation in the year 1893, but the remainder in said easement and strip, being contingent, did not become barred."

It was further held that the deed of March 2, 1909, from Nancy J. Callison and children to the Drapers purported to convey the fee in all said land, including the strip, but that the right of way was included by mistake and was later remised and released to the plaintiffs by the deed of June 20, 1923; and that upon the death of the life tenant, December 25, 1920, the remainder in fee in all the land described in the deed to the Drapers, except the right of way of the Wabash Railway Company, became vested in the Drapers; that upon the death of the life tenant, the fee in said right of way strip became vested in Susan Freeman and the plaintiffs James Callison, Leota Feazell and Annie L. Lusher; that "on and after said 25th day of December, 1920, the continued occupation of said strip as a right of way by the defendant constituted a taking and appropriation against said remaindermen as to said strip since their interests therein were then vested, and that plaintiffs are entitled to damages for such appropriation."

The trial court then found the reasonable amount of damages plaintiffs were entitled to recover by reason of the appropriation of the right of way to be $600, but allowed nothing by way of damages to the rest of the tract caused by the taking of said strip, and rendered judgment for the said sum of $600. Both sides appealed, the plaintiffs because nothing was awarded by way of damages to the rest of the land not actually taken, and the defendant because the court should have allowed nothing whatever.

Before proceeding to pass specifically upon either of the said appeals, it may be well to make some prelim-

inary observations. Nancy Jane Callison's deed was of record and she and her children were in possession of the land at the time the railroad company entered and took possession of said strip for a right of way. Consequently the railroad company had notice of the title of Mrs. Callison and her children to said land. [Shaffer v. Detie, 191 Mo. 377, 393; Squires v. Kimball, 208 Mo. 110, 119.]

The deed to Nancy Jane Callison and the heirs of her body, by virtue of the effect of our statute (Sec. 2267, R. S. 1919) upon such an estate in fee-tail thus arising under the common law, vested a life estate in Nancy J. Callison with remainder in fee to those who should answer the description "heirs of her body" at the date of her death. In other words, those who then constituted the heirs of her body were, prior to that date, merely contingent remaindermen, the contingency being with respect to the person. Hence, prior to the death of the life tenant, the remaindermen did not have a presently owned estate in the land, but only "a chance of owning such a thing in the future." [Reeves on Special Subjects of the Law of Real Property, sec. 578, p. 731.] Under the common law such contingent remainder should not be sold, disposed of, or conveyed away, prior to the time of its vesting by the death of the life tenant. [2 Washburn on Real Property (6 Ed.), sec. 1557.] But under our statutes and the spirit of our American institutions, the holder of such a prospective right or interest could sell it. [Reeves on Special Sub. Real Prop. sec. 608; Godman v. Simmons, 113 Mo. 122.] But all he could sell was the chance or prospective right he had, and if he died before such remainder vested, no title passed. [Godman v. Simmons, supra.] In such a sale, however, it was up to the purchaser to decide whether he would thus voluntarily purchase a mere chance.

But the situation would be vastly different if such contingent remainderman were to attempt to enforce his prospective and uncertain rights and to compel pay-

ment for damages to such possible future interest, when it was not yet certain he would have any rights to enforce. Consequently, plaintiffs could not, prior to the death of Nancy J. Callison, have maintained an action against the railroad company. [Taylor v. Adams, 93 Mo. App. 277, 280; Morrow v. Morrow, 113 Mo. App. 444, 454.] Consequently, although by our twenty-four-year Statute Limitation (Sec. 1307, R. S. 1919, as it existed prior to the amendment of 1917), the right of Nancy J. Callison to sue for damages to her life estate was barred, yet plaintiffs, being in her lifetime merely contingent remaindermen, could not maintain any action to protect or enforce their rights until she was dead. Hence, it is not seen how they can be barred, since she did not die until December 25, 1920, and this suit was instituted less than three years thereafter. For, as to the said remaindermen, limitation did not begin to run in favor of the railroad company until December 25, 1920. [Case v. Sipes, 280 Mo. 110, 118; Wells v. Egger, 259 S. W. 437, 438; Ross v. First Presbyterian Church, 272 Mo. 96, 107; Eighme v. Indiana, etc., R. Co., 249 S. W. 717, 718; Welch v. Wagner, 232 S. W. 147, 148; Hall v. French, 165 Mo. 430, 438; McMurtry v. Fairley, 194 Mo. 502, 512.]

Defendant's contention that plaintiffs are barred is based upon the opinion by Judge LAMM (concurred in by three of the other judges, and therefore constituting a majority opinion of our Supreme Court) in the case of Rivard v. Wabash Railway Co., 257 Mo. 135, 170, 173.

There was, however, no contingent remainder in that case. Mrs. Rivard, in her lifetime had owned the land in fee, and the plaintiffs sued as her heirs claiming to have inherited it from her because her deed, under which the railroad held was void (so the heirs claimed) and did not convey the land in question. She died in 1877, many years before the suit was instituted. Her children, the plaintiffs, (if their contentions were good), then had a vested interest in the land subject to their father's life estate by the curtesy. Had it not been for this life es-

tate which lasted until shortly before suit was brought, there could have been no question but that they were barred by the lapse of time after their mother's death. They claimed however, that, on account of their father's life estate entitling him to the possession of the real estate through these years, they were not barred. The opinion held, however, that since a person whose land has been appropriated for *quasi*-public purposes cannot recover possession of the land itself but can only sue for its value; therefore the question of limitation ought not to be determined according to when a possessory action could be maintained. And, since the only action which could ever accrue to the plaintiffs was an action for the value of that of which they were deprived, and since, upon the death of their mother in 1877, their interest, if any, was vested in them subject only to their father's life estate—the value of which could have been ascertained then and deducted from their interest—there was no reason why they could not then, or at any time within ten years after her death, have instituted an action to recover the value of what they had lost, and having neglected to do so within the period of limitation, they should be declared barred. Furthermore, this was in a case where the mother had received, kept and used the purchase price of the land, and, as the opinion states, the court was "in a strait betwixt two because the broad justice of the matter runs in a strong current with the defendant" and the result reached "did exceedingly excellent justice."

But the plaintiffs in the case at bar are in an entirely different situation. Until the death of their mother they had no estate in the land but only a chance to acquire one upon her death. Hence they had had nothing upon which, prior to her death, they could enforce an action for value or damages. There was no compensation paid by the railroad for the land it took in the case at bar. And besides, since the opinion of Judge LAMM shows on its face that it is called forth by the grating in-

justice of that particular case, it is clearly manifest that the learned judge was not announcing a general principle to be followed in all other, but not analagous, cases. Of course, if the rule or principle announced in that case is applicable to the case at bar, it is our duty to follow it; but we do not think it is applicable. Hence we rule that the contention of defendant that the plaintiffs are barred is not well taken.

Defendant urges that the court erred in holding that the issue of previous grant was not in the case, that the plea of limitation put that issue in, and the proof of uninterrupted and unchallenged possession for more than fifty years was sufficient to sustain that issue. The record does not disclose that anything was said during the trial about a prescriptive grant, and certainly it was not mentioned in the pleadings, unless the plea of the Statutes of Limitation itself raised it. The trial court did not say whether the issue of previous grant was in the case or not, and there was, of course, no evidence in the case as to any previous grant. Certainly we need not say whether the plea of limitation raised such issue, for if it did, it could only do so as against the life tenant and not as against the remaindermen; and it is the rights of the latter and not the former which are involved herein. Prescription is based upon the presumption of a grant, but of course no prescriptive rights can be claimed against a party who is legally incapable of making an effective grant. [19 C. J. sec. 26, p. 877.] Not only was there no evidence of any prior grant, but any presumption which otherwise might have arisen from long continued occupation would operate only against the life tenant and not against the contingent remaindermen; and in addition to this, the fact that these remaindermen had no title to grant would rebut the presumption of a prior grant, at least on their part, and a grant by anyone else would not be effective. [Boyce v. Mo. Pac. Ry. Co., 168 Mo. 583, 592.]

There was no error in finding that the right of way,

by mistake, was not excepted from the deed to the Drapers, because, although Draper says nothing was said about the railroad or about excepting the right of way, yet he does say that the grantors intended to sell, and the Drapers intended to buy, the two pieces of land outside of the right of way; hence neither their dealings nor the deed made as a result thereof, involved the strip taken for a right of way and its inclusion in the deed was a mistake which the Drapers corrected.

Having disposed of all the points raised by defendant in its appeal, we turn to the appeal of plaintiffs, in which they assert the court erred in not allowing anything by way of compensation for the injury to the rest of the tract not taken except the ten acres they sold, which they expressly exclude from their claim.

The physical injury to the rest of the tract which was not taken, i. e. the injury to it as a parcel of land, was, of course, inflicted upon it when the railroad, by taking a strip through it, broke it into two separate fragments. It is admitted that at the time the adjacent land itself was injured by the cutting of the strip through it, plaintiffs had a prospective right to own the same at the death of the life tenant. It is insisted the court erred in overruling plaintiffs' motion for a new trial upon the finding that plaintiff could not recover for the injury to their prospective rights in the premises.

Under our laws a contingent remainder is property, and that it may be sold and conveyed is no longer debatable. It may be levied upon and sold under proper execution. [Godman v. Simmons, supra.] This being true plaintiffs' prospective rights might be damaged, divided, or even destroyed. In the case at bar it is charged plaintiffs' rights were damaged, and that plaintiffs sustained that damage by reason of the cutting through of the right of way.

It is contended and justly so, we think, that plaintiffs sold their prospective inheritance subject to this damage. The grantee, Draper, under the deed got the land already damaged; no right to claim damage passed to

Draper by the deed. And by the same token it must be held that the quitclaim deed from Draper back to plaintiffs in no way passed to plaintiffs any rights not conveyed to him. The damage was complete before the execution of the deed to Draper. The general rule in this respect is stated in Roberts v. Railway, 158 U. S. 1, 10, as follows:

"It is well settled that where a railroad company, having the power of eminent domain, has entered into actual possession of land necessary for its corporate purposes, whether with or without the consent of the owners of such lands, a subsequent vendee of the latter takes the land subject to the burthen of the railroad and the right to payment from the railroad company if it entered by virtue of an agreement to pay, or to damages, if the entry was unauthorized, belongs to the owner at the time the railroad company took possession.

See also Whitecotton v. Railroad, 104 Mo. App. 65, 78 S. W. 318, and cases therein cited.

It is plaintiffs' position that the deed to Draper did not pass their right to claim damages; that such damage arose at the time the land was taken; that such right was prospective and suit therefor could not have been instituted until such prospective right became actual. We think this position is correct and it follows, therefore, that plaintiffs' right of action for this element of the damages claimed was unaffected and not influenced by anything that transpired either before or after it became invested in the remaindermen by the death of the life tenant; and the court erred in refusing to take this element into consideration in its findings. Under the pleadings and proof, this element of damage was in the case.

For the reasons above stated, we hold the court erred in overruling plaintiffs' motion for a new trial. The judgment of the court in reference to that element of damage to the land not taken, is hereby reversed and the cause remanded for a new trial thereon.

*Bland, J.,* concurs; *Trimble, P. J.,* absent.