[Civ. No. 8876. First Appellate District, Division Two.—October 31, 1933.]

JOHN W. RHODA et al., Respondents, v. THE COUNTY OF ALAMEDA, Appellant.

Earl Warren, District Attorney, Ralph E. Hoyt, Chief Assistant District Attorney, and James H. Oakley and R. Robert Hunter, Deputies District Attorney, for Appellant.

William S. Bayless and Stanley Pedder for Respondents.

DOOLING, J., *pro tem.*—This is an appeal from an order granting plaintiffs a new trial on the ground of insufficiency of the evidence. Plaintiffs and respondents sued for damages alleged to have been done to certain property fronting on Webster Street in the city of Alameda by reason of the removal of the Webster Street bridge across the Oakland estuary and the substitution of a tube under said estuary by defendant and appellant County of Alameda. The case was tried before a jury, which brought in a verdict for defendant. The trial court thereafter granted the motion for new trial, from which this appeal is taken.

Appellant urges five grounds for reversal: 1. That respondents did not file a claim in accordance with sections 4075 and 4078 of the Political Code; 2. That there was no competent evidence in the record showing damage to the property; 3. That respondents are estopped to claim damages by reason of an agreement and lease entered into by respondents' predecessor in title, as executrix of the will under which respondents inherited, whereby such executrix leased certain of said property to appellant for use during the construction of the tube complained of in this action; 4. That since appellant removed the Webster Street bridge by order of the Secretary of War acting under the paramount authority of the United States of America over navigable waters respondents cannot hold appellant liable in damages therefor; 5. That at the time the bridge was re-

moved and the tube constructed respondents were contingent remaindermen with no vested interest in the property claimed to have been damaged and hence were not damaged in any property right.

For convenience we shall depart from the order in which these points were made in discussing them in this opinion. We shall first take up the' point that there is no competent evidence of damage in the record. It is not disputed by appellant that the property might have suffered damage from this improvement for which the owners would be entitled to compensation from appellant, and evidence was introduced which, if competent, established very substantial damage. However, this evidence was all introduced over appellant's objection and it is appellant's claim that the evidence is not competent because it includes improper elements of damage and in some cases was not given by the witnesses in the manner allowed by law for proving such damages. ■ We need not pause to decide whether the evidence was competent or properly received because that question is not open to appellant on this appeal. The precise question was passed upon in *Globe Grain & Milling Co.* v. *Drenth,* 41 Cal. App. 604 [183 Pac. 285]. In that case, as in this, a motion for new trial was granted upon the ground of insufficiency of the evidence. An allegation of the answer was treated by the trial court as evidence of the fact alleged and the jury so instructed. The appellate court held that this was error, but not error of which appellant could complain upon an appeal from an order granting a new trial, the court saying at pages 606, 607:

"But having been so regarded upon the trial, the defendant, upon a motion by plaintiff for a new trial, is not entitled to have this evidence disregarded. As before stated, the only ground upon which the order in this case granting a new trial can be supported is that the evidence is insufficient to sustain the judgment in favor of the defendant, and the established rule is that on an appeal by defendant from such order he cannot be heard to complain that evidence was improperly admitted in favor of plaintiff. The case upon appeal, therefore, must be considered in the light of all the evidence embraced within the record, including that improperly admitted over the defendant's objection. (Citing cases.) It follows that the allegation of defendant's separate defense

above referred to, having been presented to the jury as an admission in favor of the plaintiff, although over defendant's valid objection, was properly regarded as evidence in the case by the trial court in its decision on the motion for a new trial.''

To the same effect are: *Rapp* v. *Southern Service Co.*, 116 Cal. App. 699, 708 [4 Pac. (2d) 195]; *Seaward* v. *Malotte,* 15 Cal. 304, 306, 307; *McCloud* v. *O'Neall,* 16 Cal. 392; *Pierce* v. *Jackson,* 21 Cal. 636; *Coyle* v. *Lamb,* 123 Cal. 264 [55 Pac. 901]. The reason for the rule was tersely expressed by Field, C. J., in *McCloud* v. *O'Neall, supra,* at page 398:

"If the District Court had held the witnesses, Kelty and Reynolds, incompetent, by reason of interest, the defendant might have offered other evidence to the same effect, or their competency might, perhaps, have been immediately restored by the execution of proper releases. The rule for which the appellant contends would work great injustice in its application. A party failing to produce evidence in his possession, because of the ruling of the court upon the admissibility of that already given, would often find that he had lost the case from a subsequent change of the views of the court, without any fault of his own.''

The reason for the rule is also very clearly explained in *Rapp* v. *Southern Service Co., supra,* at pp. 710, 711.

We think appellant's claim of waiver or estoppel by the execution of the agreement and lease by the executrix during the pendency of the work is not well taken. The purpose of this agreement was to facilitate the doing of the work which it is here claimed damaged the property, but nowhere in the agreement was there an express waiver of a possible future claim for damages, nor was any part of the consideration given by appellant expressed to be received by way of compensation for any damage to the property by reason of the improvement. The case on this phase is ruled by *Rockridge Place Co.* v. *Oakland,* 61 Cal. App. 791 [216 Pac. 64]. In that case plaintiff joined in a petition that certain street work be done. Afterwards it sued for damage to its property from the doing of such work. The claim was made that it had waived the right to seek damages by its joinder in the petition. The court ruled against the claim. That case is not distinguishable in principle from this.

■ To appellant's suggestion that because the bridge was removed by order of the Secretary of War respondents cannot hold appellant for damage to their property, respondents counter by pointing out that the order of the Secretary of War did not require the construction of a tube, but permitted the building of another bridge of different height and dimensions. This is true. Appellant replies that a bridge of the height and dimensions required by the Secretary of War might have required an approach of such character that it would have done greater damage to respondent's property than did the tube. Appellant offered no proof that this would necessarily or at all have followed had it elected to replace the bridge in the manner required by the Secretary of War. We cannot presume that such damage would have occurred in the absence of proof. Conceding, without deciding, that damage to property necessarily caused by compliance with the requirements of the United States of America would not be actionable, we are satisfied that the burden would be on appellant to show that such requirements could not be complied with in a practical manner without causing such damage to private property. This burden was not sustained by the evidence introduced in this case.

■ The real property in question came to respondents under the will of Allen D. Wilson. Under the terms of this will Amelia E. S. Wilson, the wife of the testator, took a life estate in trust with provision that upon her death "said property shall then go to and vest in John Rhoda, Ellen Rhoda, Paul Rhoda, Wilbur Rhoda, Mabel Rhoda, Floyd Rhoda, Laurence Rhoda, Grace Rhoda and Alice Rhoda (the children of Franklin Rhoda), and Ethel Rhoda, Frederick Rhoda and Madeline Heydenfeldt (the children of Albert Rhoda), free and clear of all trust and conditions, share and share alike". In other paragraphs the will provided: "In the event of the death of any of the aforementioned children of Franklin Rhoda or Albert Rhoda, before the death of my said wife, without issue surviving my said wife, then and in that event, I give, devise and bequeath the share of such child or children so dying without issue surviving my said wife, to the aforementioned children of Frank Rhoda and Albert Rhoda, surviving my said wife, share and share alike. . . . In the event of the death of

any of the aforementioned children of Franklin Rhoda or Albert Rhoda, before the death of my said wife, leaving issue surviving my said wife, then and in that event I hereby give, devise and bequeath the portion of my estate devised and bequeathed to each such child, to his issue respectively, such issue to take as by right of representation.''

In spite of the rule that wherever possible a remainder will be construed as vested instead of contingent (*In re De Vries,* 17 Cal. App. 184 [119 Pac. 109]), it seems clear that the remainders created by the above-quoted provisions of the will were contingent remainders. The case is not distinguishable from those presented in *Estate of Washburn,* 11 Cal. App. 735 [106 Pac. 415], and *In re Shoemake,* 211 Cal. 457 [295 Pac. 830]. As succinctly said in the former of the two cases cited, at page 742 of 11 Cal. App.: ''The uncertainty of any of the children of the class surviving Mrs. Higgins (the life tenant) renders the interest of any such contingent.''

However, it does not follow, as argued by appellant, that because the remainder had not vested at the time the work complained of was completed respondents have no cause of action. It is true that prior to the falling in of the life estate they could not sue for the damage done the property because prior to the vesting of the remainder they had no present property interest. (*Pavkovich* v. *Southern Pacific Ry. Co.,* 150 Cal. 39 [87 Pac. 1097]; *Chesapeake & O. R. Co.* v. *Bradford,* 6 W. Va. 220.) But if a damage was done to the remainder interest it would seem clear that the law should not be so powerless as to deny relief to the remaindermen when the remainder became vested in them. It is appellant's theory that since the life tenant had the only vested interest at the time the tube was completed, she would have the only cause of action for damages. If this is so then the property of the remaindermen would be damaged without compensation being made therefor as required by the Constitution. (Art. I, sec. 14.) It is plain that the life tenant could only recover for damage to her life estate and if the remaindermen cannot recover for damage to the remainder when their estates vest there can be no recovery by anyone for the damage to the remainder. Such an inequitable rule should only be adopted under the compulsion of absolute necessity. No such necessity exists in a case of this char-

acter. It is sufficient to hold, not that the right of action for damages to the contingent remainder does not exist, but rather that it is postponed until the life estate falls in and the remainder vests in fee. In the analogous situation of a possessory action by a remainderman it is well settled that while during the life tenant's term the remainderman cannot maintain a possessory action against an intruder because he has no present right of possession, nevertheless the statute of limitations does not run against him during this period of incapacity, and upon the death of the life tenant he may then prosecute the possessory action. (*Thompson* v. *Pacific Electric R. Co.*, 203 Cal. 578 [265 Pac. 220]; *Newport* v. *Hatton*, 194 Cal. 132 [231 Pac. 987]; *Akley* v. *Bassett*, 189 Cal. 625 [209 Pac. 576]; *Pryor* v. *Winter*, 147 Cal. 554 [82 Pac. 202, 109 Am. St. Rep. 162]; *Charleston R. Co.* v. *Hughes*, 105 Ga. 1 [30 S. E. 972, 70 Am. St. Rep. 17]; *Callison* v. *Wabash R. Co.*, 219 Mo. App. 271 [275 S. W. 965]; *New York R. Co.* v. *Livingston*, 238 N. Y. 306 [144 N. E. 589, 34 A. L. R. 1078]; *McPherson* v. *Black*, 215 Ky. 92 [284 S. W. 413, 46 A. L. R. 1424]; *Westcott* v. *Meeker*, 144 Iowa, 311 [122 N. W. 964, 29 L. R. A. (N. S.) 947].) In *Pryor* v. *Winter, supra,* at page 559, the court said: "It would be strange, indeed, if during the life of the particular tenant a remainderman could be compelled to lose his estate on account of another's possession which he would be utterly helpless to interrupt." It would be equally strange if during the life of the particular tenant the contingent remainderman could lose a part of his estate, by its value being decreased by a public improvement, because at the time the damage was done his estate was not vested and hence at that time he was powerless to sue.

In the analogous situation of a condemnation suit against the life tenant the Supreme Court of Georgia said of the rights of a contingent remainderman in *Charleston R. Co.* v. *Hughes, supra:*

"If, at the time the condemnation proceedings were had, there were two estates in the property, one a life estate and the other a contingent remainder, the fact that it was impossible to ascertain the persons who would eventually take as remaindermen upon the happening of the contingency provided for in the will would not authorize the conclusion that

the interest of such remaindermen was acquired by proceedings against the life tenant, who, under no circumstances, could be held to represent them.''

■ Our Constitution, article I, section 14, makes no distinction between taking and damaging property. If the contingent remainderman's property cannot be taken for a public use without compensating him when the remainder vests, it cannot be damaged without making similar compensation upon the vesting of his estate. The contingent remainderman should not be remediless for the injury done to his property during the life estate. His only possible remedy in the case of a public improvement, which for reasons of public policy he should not be allowed to enjoin, is by action for damages after the vesting of his estate. We find no difficulty in holding that while respondents were powerless to sue when this public improvement was completed, a cause of action for the damage done their fee in remainder accrued to them at the time the remainder became vested by the death of the life tenant. The life tenant died on April 30, 1931, and on that date their cause of action became complete.

■ At the 1931 session of the legislature a paragraph was added to section 4075 of the Political Code, reading in part as follows:

"All claims against any county . . . whether such claim be founded upon contract, express or implied, or upon any act or omission of the county or any officer or employee thereof . . . shall be presented to the board of supervisors as herein provided before any suit may be brought on any such claim, and no suit shall be brought on any such claim until said claim has been presented as herein provided and rejected in whole or in part.''

The section as so amended is broad enough to require the presentation of a claim for the damages herein sued for as a condition precedent to suit. Respondents argue, however, that since the amendment did not become effective until August 15, 1931, and since, as they claim, their cause of action accrued on October 27, 1928, and the right of action would have been barred by limitation of time on October 27, 1931 (Code Civ. Proc., sec. 338, subd. 2), and since under section 4078 of the Political Code the board of supervisors are given ninety days to act upon such claims, to make the

section applicable to them would carry the time within which the board could reject their claim beyond the period of limitations and automatically bar their action. Given the premise supposed, to apply the amended section to their cause of action would amount to an unconstitutional deprivation of property. The fallacy of respondents' argument lies in their assumption that the statute of limitations commenced to run against them on October 27, 1928. We have held that their cause of action did not accrue until the death of the life tenant on April 30, 1931, and the statute of limitations commenced to run on that date. This gave them ample time to file the claim required by the amendment to Political Code, section 4075. "Acts of limitation affect the remedy and not the right; therefore, the constitutionality of statutes which shorten or extend the time within which a cause of action may be asserted is beyond question. Subject always to the limitation that a reasonable time must be allowed for prosecuting a proceeding after the passage of an act establishing or shortening such a period, the power of the legislature is absolute in such matters." (5 Cal. Jur., pp. 755, 756, sec. 148; *Doehla* v. *Phillips*, 151 Cal. 488, 492 [91 Pac. 330]; *Davis & McMillan* v. *Industrial Acc. Com.*, 198 Cal. 631, 636, 637 [246 Pac. 1046, 46 A. L. R. 1095].)

Said the Supreme Court of the United States in the leading case of *Terry* v. *Anderson,* 95 U. S. 628 [24 L. Ed. 395]:

"This court has often decided that statutes of limitation affecting existing rights are not unconstitutional, if a reasonable time is given for the commencement of an action before the bar takes effect. (Citing cases.) It is difficult to see why, if the legislature may prescribe a limitation where none existed before, it may not change one which has already been established. The parties to a contract have no more a vested interest in a particular limitation which has been fixed, than they have to an unrestricted right to sue. They have no more a vested interest in the time for the commencement of an action than they have in the form of the action to be commenced; and as to the forms of action or modes of remedy, it is well settled that the legislature may change them at its discretion, provided adequate means of enforcing the right remain."

As a matter of fact the amendment to Political Code, section 4075, did not at all shorten the respondents' time to

sue, but simply added a condition precedent to their right to sue, the filing of a claim; and ample time, over two and one-half years, remained to them within which to comply with this requirement before the bar of the statute of limitations would arise. That the legislature may change the remedy for the enforcement of an existing right so long as the new remedy is adequate is a legal commonplace. (5 Cal. Jur., p. 781, sec. 169.) The requirement of the filing of a claim by respondents as a condition precedent to suit falls well within this legislative power. There is no pleading or proof that any claim was filed and on this ground we must hold that the evidence was insufficient to support a judgment in respondents' favor. It follows that the order granting a new trial on the ground of insufficiency of the evidence was error.

The question is not presented to us, and we do not attempt to decide, whether the judgment in this case would be a bar to a new action by respondents after the filing and rejection of a claim; but we consider it only just to the respondents, in view of the possibility of such a new action being brought, to make clear that we are reversing the order granting a new trial on the sole ground that there was no pleading or proof of the presentation and rejection of a claim as required by sections 4075 and 4078 of the Political Code.

The order granting a new trial is accordingly reversed on the single ground just mentioned.

Nourse, P. J., and Sturtevant, J., concurred.